*ORIGINAL*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 0 1 2005

LUTHER D. THOMAS, Clerk
By _____ Deputy Clerk

| | | |
|---|---|---|
| **LAURA SKOP** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **FILE NO.:**  **1 05-CV 1754** |
| | : | |
| **CITY OF ATLANTA, GEORGIA,** | : | **BBM** |
| **OFFICER TIMOTHY BROWN,** | : | |
| in his individual capacity, & | : | |
| **SERGEANT THOMAS L.** | : | |
| **PADGETT,** in his individual | : | |
| capacity, | : | |
| | : | |
| **Defendants**. | : | |

## COMPLAINT

**COMES NOW**, Laura Skop [hereinafter "Plaintiff"] and files her Complaint against the **City of Atlanta, Georgia**, **Officer Timothy Brown** and **Sergeant Thomas L. Padgett** [hereinafter collectively "Defendants" and separately as "the City"; "Officer Brown;"and "Sergeant Padgett"], as follows:

## INTRODUCTION

1.

The Plaintiff brings this civil rights action for equitable relief, monetary damages, attorneys fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988 arising

-1-



FORMS RECEIVED
Consent To US Mag. ✓
Pretrial Instructions ✓
Rule VII NTC

from the unreasonable seizure of the Plaintiff's person by a law enforcement officer and malicious prosecution of the Plaintiff in violation of the Fourth and Fourteenth Amendments of the United States Constitution. The Plaintiff also alleges pendant state law claims against Officer Brown and Sergeant Padgett for false arrest and malicious prosecution arising from the same transactions and occurrences as the federal civil rights claims allege herein.

## JURISDICTION AND VENUE

2.

This Court has original jurisdiction over the Plaintiff's federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343. The Court may exercise pendant or supplemental jurisdiction over the Plaintiff's State law claims pursuant to 28 U.S.C. § 1367(a).

3.

Venue is proper in this District pursuant to 28 U.S.C. § 1391 because all the parties reside in the Northern District of Georgia and the causes of action alleged herein occurred in this District.

## PARTIES

4.

Laura Skop is a citizen of the State of Georgia who resides in Fulton County within the Northern District of Georgia. Skop has standing to bring claims of this kind and nature in this Court.

5.

Officer Brown is a citizen of the State of Georgia residing in the Northern District of Georgia. Officer Brown is subject to the personal jurisdiction of this Court and may be served with summons and process at the Atlanta Police Department, 675 Ponce de Leon Avenue, NE, Atlanta, Georgia 30308.

6.

At all times relevant to this action, Officer Brown was employed as a police officer by the Atlanta Police Department. Officer Brown acted under color of state law and within the scope of his discretionary functions as a police officer for the City of Atlanta.

7.

Sergeant Padgett is a citizen of the State of Georgia residing in the Northern District of Georgia. Sergeant Padgett is subject to the personal jurisdiction of this

Court and may be served with summons and process at the Atlanta Police Department, 675 Ponce de Leon Avenue, NE, Atlanta, Georgia 30308.

8.

At all times relevant to this action, Sergeant Padgett was employed as a police officer with supervisory authority by the Atlanta Police Department. Sergeant Padgett acted under color of state law and within the scope of his discretionary functions as a supervisory officer for the City of Atlanta.

9.

Defendant City of Atlanta, ["City"], is a municipality organized pursuant to the Georgia Constitution and is subject to the jurisdiction of this Court. The City of Atlanta may be served with summons and process by and through Mayor Shirley Franklin at Atlanta City Hall, Suite 2400, 55 Trinity Avenue, S.W., Atlanta, Georgia.

10.

The Plaintiff alleges that the City is liable for the injuries she suffered as a result of the illegal actions of Officer Brown and Sergeant Padgett because policies and customs established by officials of the City of Atlanta Police Department with final policy making authority were the moving force behind the illegal actions of the individual defendants.

-4-

## **FACTUAL ALLEGATIONS**

11.

The Plaintiff owns a single family residence located at 1375 Middlesex Avenue, Atlanta, GA 30306.

12.

On July 10, 2003, the plaintiff left work and drove home around 5:30 p.m. She drove through a severe thunderstorm.

13.

Several trees fell in neighborhoods around Atlanta during the storm. One tree crushed a car in the Morningside area, killing a mother and her two children who were inside the car.

14.

Plaintiff did not want to be in her car any longer than necessary because she was afraid of the weather.

15.

Plaintiff turned right onto Middlesex Avenue from Hillpine Avenue. Her residence was approximately 100 feet down Middlesex Avenue on the left hand side of the street.

16.

Plaintiff noticed the flashing blue lights of a police patrol car just beyond her house on Middlesex Avenue.

17.

The patrol car belonged to Officer Brown of the Atlanta Police Department. Officer Brown had been called to the scene of a fallen tree on Middlesex Avenue. The tree was located at least eighty feet down the Middlesex Avenue from the Plaintiff's residence.

18.

Officer Brown positioned his vehicle at an angle across Middlesex Avenue, approximately eighty feet to the North of the downed tree. Officer Brown's vehicle was blocking the Plaintiff's driveway at 1375 Middlesex Avenue, NE.

19.

Plaintiff was approaching her home on the North side of Officer Brown's vehicle. She did not have to go past Officer Brown's patrol car or come anywhere near the downed tree to enter her driveway.

20.

The Plaintiff stopped her vehicle parallel to her house and approximately a foot and a half from the sidewalk. She put her blinker on so that Officer Brown would see that she needed to turn left into her driveway, not proceed past his vehicle into the hazardous area.

21.

She waited several minutes. Officer Brown did not move his patrol car so that Plaintiff could enter her driveway.

22.

Plaintiff rolled down her passenger window to speak to Officer Brown. He rolled down his passenger window. Plaintiff said, "Can you please pull up? I need to get in my driveway." Plaintiff heard no response. Officer Brown allegedly stated, "Can't you see there's a tree and power lines down and this is a hazardous area?" He then rolled up his window.

23.

Plaintiff was scared to be in her car. She wanted to get inside her home where she would be safer during the severe storm.

24.

Unable to get Officer Brown's attention from the relative safety of her car, Plaintiff stepped outside in the pouring rain and lightning.  She knocked on the driver's window of the patrol car.  As she pointed to her driveway, she said, "I just need to pull in my driveway."  Officer Brown ignored her.  Plaintiff kept trying to get his attention.

25.

Because Officer Brown refused to acknowledge her simple request, Plaintiff asked for his name and badge number.

26.

Officer Brown flung open his door and stepped out of his vehicle.  Plaintiff was afraid and took several steps back.   Speaking in a loud, belligerent and confrontational manner, Officer Brown said, "Do you know I can arrest you for obstruction?"

27.

The Plaintiff asked, "How can you arrest me?  This is my house.  I'm just trying to get you to move forward a foot or so."

28.

Officer Brown took out his handcuffs, grabbed the Plaintiff's right arm, and put her in handcuffs. He placed her into the backseat of his patrol car and told her she was under arrest for Obstruction.

29.

Officer Brown got back into his patrol car. He shouted, "I can't believe you obstructed me." Plaintiff was scared of Officer Brown. She asked him not to arrest her. He ignored her.

30.

Officer Brown contacted Sergeant Padgett, his supervising officer. He informed Sergeant Padgett that he had arrested Plaintiff for Obstruction. He asked Sergeant Padgett for permission to impound the Plaintiff's vehicle.

31.

Sergeant Padgett knew that Officer Brown did not have probable cause to arrest Plaintiff for Obstruction. Sergeant Padgett authorized Officer Brown's impound of the Plaintiff's vehicle.

32.

Instead of ordering the Plaintiff's release from custody, Sergeant Padgett colluded with Officer Brown to create a post hoc justification for the Plaintiff's arrest. Since the illegal arrest had already been made, Sergeant Padgett told Officer Brown to issue a second citation to the Plaintiff for Failure to Obey an Authorized Person Directing Traffic to cover up Officer Brown's illegal arrest for Obstruction. But no probable cause existed for the second charge either, a fact known to Officer Brown and Sergeant Padgett when the second citation was issued.

33.

Officer Brown kept Plaintiff in the back of his patrol car for approximately two (2) hours. The Plaintiff remained handcuffed behind her back in a seated position throughout this time. She complained to Officer Brown that she was in pain. Officer Brown refused to loosen or remove the handcuffs.

34.

Officer Brown transported Plaintiff to a police station in Zone 2. Officer Brown made the Plaintiff sit in a chair in the lobby area of the police station. Plaintiff remained handcuffed with her arms behind her back. She remained at the police station in handcuffs for several hours.

35.

The Plaintiff's blouse was soaking wet from being out in the rain.  Her bra and breasts were visible through her wet shirt.  None of the officers in the police station, including Officer Brown, offered to cover the Plaintiff.  The officer kept looking and laughing at the Plaintiff while she was at the station house.

36.

Officer Brown searched every personal possession he seized from the Plaintiff's vehicle.

37.

After several hours, a female officer came to the police station and transported the Plaintiff down to jail.  After the book in process, several of the Plaintiff's neighbors picked her up outside the jail after she was related on an "O.R." bond.

38.

The Plaintiff was in custody for approximately nine hours.  For much of that time, she remained handcuffed with her hands behind her back in a seated position.  She experienced significant pain from being kept in that position throughout her illegal seizure.

39.

Just a few days after her arrest, the Plaintiff filed an Internal Affairs complaint against Officer Brown.  The Plaintiff's complaint was ultimately upheld by the City of Atlanta Police Department.  Officer Brown was disciplined for violating several department rules: 2.49 (Abuse of Authority); 1.01 (Appropriate Action Required) and 2.02 (Courtesy).  He received a two day suspension, a written reprimand and an oral admonishment.

40.

As a result of Officer Brown's illegal arrest of the Plaintiff authorized by Sergeant Padgett, criminal proceedings were instituted in the City Court of Atlanta. The Plaintiff was scheduled to appear in court on July 31, 2003.  The Plaintiff received a notice from the Solicitor General for the City Court of Atlanta directing her not to appear in court on July 31, 2003 because his office was investigating the circumstances of her arrest.

41.

The Plaintiff had been given an "O.R." bond, so she was required to report by telephone on a weekly basis to a probation officer.  She remained subject to criminal prosecution for thirteen months.

-12-

42.

On September 3, 2004, the Plaintiff received a letter from the Solicitor General's office stating that "a determination has been made by this office that no charges will be filed against [the Plaintiff] arising out of the incident near her home on July 10, 2003."

43.

The criminal prosecution instituted by Officer Brown and Sergeant Padgett against the Plaintiff terminated in her favor on or about September 3, 2004.

44.

The Plaintiff suffered serious bodily injuries as a result of Officer Brown's illegal arrest on July 10, 2003 authorized by Sergeant Padgett. Her injuries included a damaged rotator cuff in her right shoulder that required medical treatment.

45.

The Plaintiff also suffered a serious injury to her lower back. Being handcuffed with her arms behind her back in a seated position for over five hours placed extraordinary pressure on the discs between the vertebrae in her lower spine.

46.

In the months following her illegal arrest, the Plaintiff began to suffer severe pain in her lower back. Her physician diagnosed her with two herniated discs at L4-L5 and L5-S1. Considering her lack of any pre-existing condition, the lack of any evidence of natural deterioration, and the specific circumstances surrounding her arrest, her physician concluded that, to a reasonable degree of medical probability, her spinal injuries were the proximate cause of Officer Brown's illegal arrest of the Plaintiff.

47.

The Plaintiff underwent spinal surgery in January, 2005. She may require a second surgery to repair the second disc. Plaintiff's current medical expenses alone exceed eighty thousand dollars.

## COUNT I

## FOURTH AMENDMENT – 42 U.S.C. §1983

### (False Arrest – All Defendants)

48.

On July 10, 2003, Officer Brown was engaged in the lawful discharge of his official duties by blocking traffic on Middlesex Avenue.

49.

Officer Brown knew that the Plaintiff did not actively obstruct or hinder Officer Brown in the discharge of his official duties by asking him to pull his car up approximately one foot so that she could enter her driveway at 1375 Middlesex Avenue or asking him for his name and badge number.

50.

Officer Brown also knew that the Plaintiff did not refuse to follow his lawful instructions at the scene.

51.

No probable cause existed to support the Plaintiff's arrest for misdemeanor Obstruction or Failure to Obey an Authorized Person Directing Traffic.

52.

At all times relevant to this action, clearly established law prohibited the arrest of a person for asking a law enforcement officer to pull their vehicle forward so that the person could enter their driveway during a bad storm where the circumstances did not require that the law enforcement officer keep his vehicle in that precise location, there was no immediate threat to the bodily safety of the officer or anyone else, and the officer was not actively engaged in a criminal investigation.

53.

Sergeant Padgett was Officer Brown's supervising officer.  Officer Brown called Sergeant Padgett to notify him of the Plaintiff's arrest.  Sergeant Padgett knew that he had a legal duty as Officer Brown's supervising officer to intervene and protect the Plaintiff from Officer Brown's illegal seizure of the Plaintiff without probable cause.

54.

From all the information known or otherwise readily available to Sergeant Padgett shortly after the Plaintiff's arrest, Sergeant Padgett knew that Officer Brown had arrested the Plaintiff without probable cause.  Sergeant Padgett failed  to intervene to protect the Plaintiff but instead took action to cover up Officer Brown's illegal arrest of the Plaintiff.

55.

At all times relevant to this action, clearly established law required that a supervisory officer with knowledge that a subordinate officer is actively engaged in a violation of a citizen's civil rights intervene to protect the citizen from the subordinate's illegal activity.

56.

The City of Atlanta delegates final policy making authority to officials in the City of Atlanta Police Department to implement policies, customs and procedures to train officers assigned to its department on the proper use of police power during police-citizen encounters that do not arise from criminal activity.

57.

Upon information and belief, officials in the City of Atlanta Police Department with final policy making authority failed to offer adequate training to its patrol officers (Officer Brown) and their supervisors (Sergeant Padgett) in the proper use of police power during police-citizen encounters that do not arise from criminal activity.

58.

As a direct and proximate cause of the Defendants unlawful actions, the Plaintiff was seized and detained against her will, suffered serious physical injuries and a loss of liberty in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution entitling her to actual and compensatory damages in an amount to be determined by the enlightened conscience of the jury.

59.

The actions of Officer Brown and Sergeant Padgett described herein were willful, deliberate, and malicious, entitling her to an award of punitive damages against them in an amount to be determined by the enlightened conscience of the jury.

## COUNT II

### FOURTH AMENDMENT – 42 U.S.C. § 1983

### (Malicious Prosecution – All Defendants)

60.

Officer Brown and Sergeant Padgett were employed as police officers by the City of Atlanta Police Department. Officer Brown and Sergeant Padgett acted under color of state law and within the scope of their discretionary functions throughout the incident involving the Plaintiff on July 10, 2003.

61.

The City of Atlanta delegates final policy making authority to officials in the City of Atlanta Police Department to implement policies, customs and procedures to train officers assigned to its department on the proper use of police power during police-citizen encounters that do not arise from criminal activity, including the institution of criminal proceedings arising from such police-citizen encounters.

62.

Upon information and belief, officials in the City of Atlanta Police Department with final policy making authority failed to offer adequate training to its patrol officers (Officer Brown) and their supervisors (Sergeant Padgett) in the proper use of police power during police-citizen encounters that do not arise from criminal activity, including the institution of criminal proceedings arising from such police-citizen encounters.

63.

As a direct and proximate result of the Defendants' unlawful actions, the Plaintiff was subjected to prosecution for misdemeanor Obstruction and Failure to Obey an Authorized Person Directing Traffic.

64.

The Plaintiff's criminal prosecution was instituted pursuant to two valid Uniform Traffic Citations issued by Officer Brown with the approval of Sergeant Padgett on or about July 10, 2003.

65.

The Plaintiff's criminal prosecution terminated in her favor when the Solicitor General for the City Court of Atlanta concluded that "no charges would be filed

-19-

against [the Plaintiff]."

66.

Officer Brown and Sergeant Padgett knowingly and willfully instituted and maintained the Plaintiff's criminal prosecution with malice and without probable cause.

67.

The City of Atlanta's failure to train its officer's in the proper use of police power during police-citizen encounters that do not arise from criminal activity, including the institution of criminal proceedings arising from such police-citizen encounters was the proximate cause of Officer Brown and Sergeant Padgett's violations of the Plaintiff's civil rights.

68.

Reasonable officers in Officer Brown and Sergeant Padgett's positions would have known that clearly established law prohibited them from arresting, instituting and maintaining a criminal prosecution of the Plaintiff under the circumstances described herein.

69.

As a direct and proximate result of the Defendants' malicious prosecution of the Plaintiff, she was seized and detained against her will, suffered injuries and loss of liberty in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

70.

As a direct and proximate cause of the Defendants' unlawful actions, the Plaintiff has and will continue to incur economic damages including lost wages, loss of economic opportunity, as well as other economic damages in an exact amount to be proven at trial.

71.

As a direct and proximate cause of the Defendants' unlawful actions, the Plaintiff has incurred compensatory damages for pain, suffering, mental and emotional distress, anxiety, humiliation, outrage, loss of reputation, and other elements thereof in an amount to be determined by the enlightened conscience of the jury.

72.

Officer Brown and Sergeant Padgett's arrest, institution and maintenance of a criminal prosecution of the Plaintiff  was done willfully, deliberately, and maliciously, thereby entitling her to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT III

## FALSE ARREST – O.C.G.A. § 51-7-1

## (Officer Brown & Sergeant Padgett)

73.

When the Plaintiff was placed under arrest, Officer Brown and Sergeant Padgett knew that the Plaintiff  had not impeded or otherwise obstructed Officer Brown  in the lawful discharge of his official duties.

74.

With personal spite and a general disregard for the right consideration of mankind, Officer Brown and Sergeant Padgett illegally arrest the Plaintiff for misdemeanor Obstruction without probable cause, as the circumstances described fully herein would satisfy a reasonable person that Officer Brown and Sergeant Padgett had no grounds for arresting the Plaintiff other than his desire to injure her.

75.

As a direct and proximate result of Officer Brown and Sergeant Padgett's false arrest of the Plaintiff, she was seized and detained against her will, thereby suffering injuries and a loss of liberty entitling her to recovery of actual, compensatory and punitive damages in amounts to be determined by the enlightened conscience of a jury.

## COUNT IV

## MALICIOUS PROSECUTION – O.C.G.A. § 51-7-40

## (Officer Brown & Sergeant Padgett)

76.

Officer Brown and Sergeant Padgett, acting with actual malice and intent to injure, instituted a criminal prosecution against the Plaintiff without probable cause, as the circumstances described fully herein would satisfy a reasonable person that they had no grounds for arresting the Plaintiff other than his desire to injure her.

77.

As a direct and proximate result of Officer Brown and Sergeant Padgett's malicious prosecution of the Plaintiff, she was seized and detained against her will, suffered injuries and a loss of liberty entitling her to recover actual, compensatory and

punitive damages from Officer Brown and Sergeant Padgett in amounts to be determined by the enlightened conscience of a jury.

**WHEREFORE**, the Plaintiff respectfully requests the following relief:

A)    That the Court declare that Defendants' actions, policies, and practices complained of herein violated the rights of the Plaintiff under the First, Fourth and Fourteenth Amendments of the Constitution of the United States of America;

B)    That Defendants, their agents, their employees and successors be permanently enjoined from violating the rights of the Plaintiff and others under the First, Fourth and Fourteenth Amendments to the Constitution of the United States of America;

C)    That special damages be awarded to compensate the Plaintiff for her economic injuries as a consequence of the Defendants' violations of her rights in an amount to be determined by the enlightened conscious of the jury;

D)    That compensatory damages be awarded against each of the Defendants individually to compensate the Plaintiff for her pain and suffering, mental and emotional distress, anxiety, humiliation, outrage, loss of professional and personal reputation, as a consequence of the Defendants' actions in an amount

to be determined by the enlightened conscious of the jury;

E)   That punitive damages be awarded against Officer Brown and Sergeant Padgett

in an amount to be determined by the enlighten conscious of the jury to deter

them and others from similar misconduct in the future;

F)   That a trial by jury be had on all issues wherein a jury trial is permitted under

law;

G)   That attorney's fees and expenses of litigation be awarded as authorized under

42 U.S.C. §1988;

H)   That prejudgment interest be awarded; and,

I)   That the Court award such other equitable or monetary relief as the Court

deems just and proper.

Respectfully submitted this _1st_ day of July, 2005.

_____
WILLIAM J. ATKINS
State Bar No. 027060

**PARKS, CHESIN & WALBERT, P.C.**
75 Fourteenth Street, 26th Floor
Atlanta, GA  30309
(404) 873-8000
(404) 873-8050
Attorneys For Plaintiffs