# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

_____
                  )
LAURA SKOP,            )
                  )
          Plaintiff,    )
                  )     CIVIL ACTION
     vs.             )
                  )     FILE NO. 1:05-CV-1754-BBM
CITY OF ATLANTA, GEORGIA,  )
OFFICER TIMOTHY BROWN,   )
in his individual capacity, &   )
SERGEANT THOMAS L.     )
PADGETT, in his individual capacity,)
                  )
         Defendants.   )
_____)

## CITY DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Pursuant to L.R. 56.1, the City of Atlanta, Officer Timothy Brown, and

Sergeant Thomas L. Padgett[1] (the "City Defendants") file this brief in support of

their Motion for Summary Judgment and show the Court as follows:

## INTRODUCTION

On July 10, 2003, Officer Timothy Brown lawfully arrested Laura Skop

(hereinafter "Plaintiff") outside her home in Atlanta, Georgia. Despite Officer

---

[1] At all times relevant to the allegations contained in Plaintiff's complaint, Thomas Padgett held the rank of Sergeant. He was promoted to Lieutenant in March 2004.

Brown's repeated requests and warnings of danger stemming from a fallen tree and power lines on Plaintiff's street during a terrible thunderstorm, Plaintiff refused to simply park her car and to her house. Instead, she demanded that Officer Brown move his car so she could drive to her house.

But Officer Brown did not know that his patrol car was partially parked in front of Plaintiff's driveway. During the chaos of the storm, he failed to ask Plaintiff exactly where she lived. In response to Officer Brown's effort to secure the area and prevent her from nearing a hazardous area, Plaintiff jeopardized not only her safety but Officer Brown's as well. She was subsequently arrested for Obstruction and Failure to Obey an Authorized Person Directing Traffic. The charges were not prosecuted.

Plaintiff initiated this action against City Defendants on July 1, 2005 for false arrest and malicious prosecution. But there is no genuine dispute of any material fact. Further, each of the City Defendants are entitled to immunity. For these reasons, summary judgment should be granted in favor of the City Defendants.

## STATEMENT OF FACTS

Officer Timothy Brown joined the City of Atlanta Police Department ("APD") as a recruit in August 2000.[2] He graduated from the academy and has been a sworn police officer since May 2001.[3] Previously, he attended college at Middle Tennessee State University where he received an undergraduate degree in criminal justice in 1998.[4] Following graduation, Officer Brown was employed as a jailer for approximately two years with the Williamson County Sheriff's Department in Franklin, Tennessee.[5] He became a certified corrections officer around March 1999[6] and was eventually promoted to the rank of corporal.[7]

While employed with the APD, Officer Brown has received over 1400 hours of police training, including training on traffic stops, directing traffic, and emergency weather situations.[8] Prior to the instant case, only one complaint had been filed with the APD's Office of Professional Standards ("OPS") against Officer Brown for alleged inappropriate force.[9] That investigation concluded with a finding of "not sustained," which means that there was insufficient evidence to prove the allegations.

---

[2] Deposition of Timothy Brown, (hereinafter "Brown Depo.") 25:5-8, Dec. 9, 2005.
[3] Id. 27:4-6.
[4] Id. 11:10-20.
[5] Id. 12:3-10.
[6] Id. 13:7-11.
[7] Id. 13:23-24.
[8] Id. 32:12-21
[9] Id. 40:10-12.

On July 10, 2003, at approximately 5:30 pm, Officer Brown was dispatched to close a street and prevent access into a hazardous area on Middlesex Avenue in the Buckhead area of Atlanta.[10] A "very large tree"[11] had fallen during a severe thunderstorm and there were downed power lines only a few houses from Plaintiff's home.[12] A heavy downpour of rain compounded the severity of the thunderstorms.[13] Within Officer Brown's patrol zone, several other serious weather-related incidents had occurred, including three fatalities.[14]

The fallen tree located on Middlesex Avenue crushed a pickup truck.[15] The storm also cracked a huge tree in the yard of Plaintiff's neighbor directly across the street.[16] There is no dispute that the situation encountered that evening was very dangerous.[17]

Upon arriving on the scene, Officer Brown placed his vehicle in the road of Middlesex Avenue, approximately fifty feet from the large fallen tree.[18] Officer Brown angled his car so that his driver-side faced the tree.[19] A visual inspection

---

[10] Brown Depo. 33:4-10.
[11] Deposition of Laura Skop (hereinafter "Skop Depo.") 69:13-15, Oct. 25, 2005.
[12] Id. 65:1-6.
[13] Brown Depo. 110:9-11.
[14] Id. 81:16-20.
[15] Skop Depo. 70:10-14.
[16] Id. 106:12-15.
[17] Id. 58:14-16.
[18] Brown Depo. 96:20-24.
[19] Id. 108:19-22.

showed that some of the power lines were hanging very close to the ground.[20] Officer Brown believed that there may have been some live power lines.[21] At least one part of the fallen tree was placing stress on power lines that were still attached to a standing power pole.[22]

Officer Brown encountered several citizens on Middlesex Street and asked each of them to leave the location because it was a dangerous situation.[23] After dispersing the citizens in the area, Officer Brown returned to his vehicle and began doing paperwork.[24] It was raining heavily at this point.[25] The storm was in full force with rain, lightning, and thunder.[26]

Shortly thereafter, Plaintiff's vehicle pulled up behind Officer Brown's patrol car, and Plaintiff honked her horn at least once.[27] Officer Brown's vehicle partially obstructed access to the driveway of 1375 Middlesex Avenue, but he did not know that Plaintiff lived at that particular house.[28] Plaintiff rolled down her window and said to Officer Brown, "I need to get into my driveway."[29] Officer Brown did not hear Plaintiff's exact words but responded that the area was

---

[20] Id. 101:17-22.
[21] Id. 103: 12-15.
[22] Id. 127:17-21.
[23] Id. 104:20-22.
[24] Id. 110:15-23.
[25] Id. 110:6-11.
[26] Skop Depo. 66:16-18.
[27] Brown Depo. 146:10-14.
[28] Id. 177:19-20.
[29] Id. 148:11.

hazardous and instructed Plaintiff to park her car next to the curb and walk to her house.[30]

Plaintiff honked her horn and again stated that she needed to get into her driveway.[31]  Plaintiff did not indicate to which driveway she was referring.[32] Officer Brown replied that Plaintiff should park her car and walk to her home.[33] This verbal exchange occurred a third time.[34]  Plaintiff exited her vehicle, approached Officer Brown's driver's side, and knocked on the door.[35]  Officer Brown again informed Plaintiff that he was there to block the road because of the fallen tree and power lines.[36]  Plaintiff told Officer Brown that he needed to move his car so she could enter her driveway.[37]  She stated to Officer Brown that she was not going anywhere until Officer Brown moved.[38]  Officer Brown still did not know where Plaintiff lived.[39]  He exited his vehicle and explained to Plaintiff that if she did not vacate the area she would be placed under arrest.[40]  Plaintiff still did not comply and Officer Brown proceeded to arrest her.[41]

---

[30] Id. 148:8, 13-15.
[31] Id. 156:7-8.
[32] Id. 156:22:24.
[33] Id. 158:16-18.
[34] Id. 161:8-11.
[35] Id. 172:7-11.
[36] Id. 173:19-22.
[37] Id. 173: 24-25.
[38] Id. 184:13-14.
[39] Id. 177:19-20.
[40] Id. 186:22-24.
[41] Id. 187:5.

As Officer Brown placed his hand on Plaintiff's wrist, Plaintiff jerked away. Still, she did not submit to Officer Brown. Instead she stated, "I'm telling my neighbor," and began walking to her neighbor's front door.[42] Officer Brown followed Plaintiff to her neighbor's house and again informed her that she was under arrest.[43] Officer Brown ordered Plaintiff to place her hands behind her back; she was handcuffed[44] and placed in the backseat of Officer Brown's patrol car.[45]

Officer Brown contacted his supervisor, Sergeant Padgett, to inform him of the arrest[46] and to seek permission to impound Plaintiff's vehicle.[47] At this point, Officer Brown knew that Plaintiff resided at 1375 Middlesex Avenue because he had viewed her driver's license, but he remained unaware that he was actually standing outside that very address.[48] Officer Brown told Sergeant Padgett that he had arrested a lady and her car was parked in the middle of the street with the engine running and door open.[49] Based on that information, Sergeant Padgett gave Officer Brown permission to impound the vehicle.[50] During the conversation, Sergeant Padgett asked Officer Brown about Plaintiff's arrest. Officer Brown

---

[42] Id. 187:7-9.
[43] Id. 188:20-21.
[44] 189:1-6.
[45] Id. 194:23-25.
[46] Id. 202:10-13.
[47] Id. 209:6-8; Deposition of Lieutenant Thomas Padgett (hereinafter "Padgett Depo.") 64:23-24, Feb. 1, 2006.
[48] Brown Depo. 210:1-5.
[49] Padgett Depo. 69:14-15.
[50] Id. 92:17-21.

replied that he charged Plaintiff with obstruction because she would not comply with him when he was directing traffic.[51] Officer Brown believed that Plaintiff's actions warranted the charge of Failure to Obey an Authorized Person Directing Traffic and he decided to include that offense as well.[52]

While the tow truck was en route, Officer Brown finally realized that Plaintiff lived at the house he was standing directly in front of.[53] Officer Brown waited approximately thirty minutes for a tow truck to arrive.[54] He remained on the scene about five to ten minutes after the tow truck left, to complete the citations issued to Plaintiff along with an impound and inventory report.[55]

Officer Brown transported Plaintiff to the Zone 2 Precinct so that he could complete his police report, process Plaintiff, and wait for prisoner transport to the jail.[56] Sergeant Padgett loosened Plaintiff's handcuffs while at the precinct.[57] Plaintiff was transported to the Atlanta Detention Center no later than 10:00 pm.[58] Plaintiff was released on her own recognizance at approximately 3:00am the next day.[59] The City of Atlanta Solicitor ultimately declined to file charges against

---

[51] Id. 71:14-18.
[52] Brown Depo. 211:9-12, 19-20; Padgett Depo. 170:19-22.
[53] Id. 225:18-19.
[54] Brown Depo. 226:18-20.
[55] Id. 228:2-12.
[56] Brown Depo. 256:23-25.
[57] Padgett Depo. 108:3-4.
[58] Skop Depo. 95:25, 96:1.
[59] Id. 96:16-19.

Plaintiff, however he acknowledged that "there may well have been probable cause for an arrest."

Plaintiff went to work every day in the week following her arrest.[60] Yet, Plaintiff alleges that the arrest caused her to suffer lost wages and loss of economic opportunity.[61] Approximately seven months after her arrest, around February 2004, Plaintiff was extended a job offer by Matrix Resources.[62] Her prospective employer immediately conducted a background check. Plaintiff's arrest appeared during the background check, but the offer was not rescinded and Plaintiff subsequently accepted the job.[63] Matrix hired Plaintiff to work for one of its largest clients - MBNA.[64] She remained employed even after MBNA conducted its own independent background check and discovered her arrest.[65] Eventually Matrix terminated Plaintiff, but not until February 2005, a full year after she began.[66] Plaintiff admits there is no evidence to suggest that she was terminated due to her arrest.[67]

Plaintiff filed a complaint with the APD's Office of Professional Standards on July 17, 2003. An investigation was conducted and four charges were opened

---

[60] Id. 106:19-23.
[61] Compl. ¶ 70.
[62] Skop Depo. 30:8-9.
[63] Id. 30:24-24, 31:1-2.
[64] Id. 31:4-5.
[65] Id. 31:22
[66] Id. 33:8-9.
[67] Id. 36:5-8.

against Officer Brown with the following results: work rule 2.50 (Maltreatment or Unnecessary Force) was not sustained; work rules 2.02 (Courtesy), 1.10 (Appropriate Action Required), and 2.49 (Abuse of Authority) were sustained. Officer Brown received a written reprimand, an oral admonishment, and a two-day suspension. OPS found no cause to file charges against Sergeant Padgett.

Plaintiff filed this suit on July 1, 2005.

## ARGUMENT AND CITATION OF AUTHORITY

Plaintiff's complaint alleges false arrest and malicious prosecution, under both federal law (pursuant to 42 U.S.C. § 1983) and state common law. Plaintiff asserts liability against the City of Atlanta, and Officer Brown and Sergeant Padgett in their individual capacities only. All of Plaintiff's claims fail as a matter of law because each Defendant is entitled to immunity.

## I.    STANDARD OF REVIEW

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[68] The court should view the evidence and any inferences that may be drawn in the light most

---

[68]   Fed. R. Civ. P. 56(c).

favorable to the non-movant.[69]  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.[70]  To prevail, the movant need not, however, support its motion with material negating the opponent's claim.[71]  The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[72]

A dispute is genuine if the evidence is such that the factual issues may reasonably be resolved in favor of the nonmoving party.[73]  However, Rule 56 "[b]y its very terms . . . provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of <u>material</u> fact."[74]  The substantive law identifies which facts are material; material facts are those that might affect the outcome of the suit under the governing law.[75]

---

[69]  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).
[70]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[71]  *Id.* at 323.
[72]  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986).
[73]  *Id.* at 248.
[74]  *Id.* (emphasis in original).
[75]  *Id.*

## II. THE CITY OF ATLANTA IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO UNCONSTITUTIONAL CUSTOM OR POLICY THAT CAUSED PLAINTIFF'S INJURIES.

Regarding her federal claims, Plaintiff contends that she was subjected to an unlawful seizure and prosecution in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983. Local governments such as the City of Atlanta may be held liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ."[76] "A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."[77] Nor can a municipality be held liable solely because it employs a tortfeasor.[78] For liability to attach, at minimum "there must be an affirmative link between the policy and the particular constitutional violation alleged."[79] In other words, the city's policy must be the "moving force" behind the constitutional violation.[80]

Plaintiff merely alleges that "policies and customs established by officials of the City of Atlanta Police Department with final policy making authority were the

---

[76] *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).
[77] *Id.*
[78] *Wallace v. City of Montgomery*, 956 F.Supp. 965, 977 (M.D. Ala. 1996) (citing *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991)).
[79] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).
[80] *Monell*, 436 U.S. at 694.

moving force behind the illegal actions of the individual defendants."[81]  Without

actual evidence to support this claim, Plaintiff simply has not shown any policy of

the City of Atlanta that permits the warrantless arrests of persons without probable

cause.  To the contrary, Atlanta police officers are specifically instructed

concerning the <u>legal</u> circumstances under which they can make an arrest without a

warrant.

Training in the mechanics of a proper arrest begins when an APD officer is

a rookie.  Police recruits are specifically instructed concerning the circumstances

under which they can make an arrest with and without a warrant.  Prior to 2004,

the City of Atlanta provided 900 hours of training to its officers at the police

academy and 240 hours of field training.[82]  Every police recruit is required to take

courses in criminal law and procedure, wherein they are taught about reasonable

suspicion and probable cause.[83]  Every year, APD officers receive a minimum of

twenty-four hours of "in-service" training that re-emphasizes the criteria that must

be present in order to make a lawful arrest.[84]

In the years preceding and up to the time of Plaintiff's alleged injury, each

officer was also given a copy of the Atlanta Police Department Field Manual,

---

[81]  Complaint, ¶ 10.
[82]  Declaration of Sergeant Jeffrey McGirt ¶ 5.
[83]  *Id.* ¶ 6;
[84]  *Id.* ¶ 7.

which defined probable cause and delineated the circumstances under which an arrest without a warrant could be made.[85]  Specifically, the Field Manual defined probable cause as:

> That set of facts and circumstances that would lead a reasonable and prudent person to believe that a crime has been or is being committed and that the person in question is involved in a significant manner.  It is more than mere suspicion, but less than actual certainty.  Steps toward probable cause are:
>
> a.   **The officer's observations of the offender's activities**.
> b.   A police radio transmission describing the offender.
> c.   A report by a victim or witness, including a description of the offender, to the officer.
> d.   Information gathered from a reliable informant and other corroborating evidence gathered by the officer.[86]

Regarding the requirements for a warrantless arrest, the Field Manual explicitly adopted the language of O.C.G.A. § 17-4-20(a):

> An arrest for a crime may be made by an officer, without a warrant, when at least one of the following conditions exists (Ga. Code 17-4-20):
>
> a.   **An offense was committed in his or her presence** or within his or her immediate knowledge; or
> b.   Probable cause exists to believe that the offender has just committed a felony; or
> c.   The offender is trying to escape; or
> d.   There is likely to be a failure of justice if the officer takes the time to obtain a warrant; or

---

[85]   Use of the Field Manual expired in July 2004.
[86]   APD Field Manual § 6.1.0, et seq.

e.   If the officer has probable cause to believe that an act of family violence (as defined in Ga. Code 19-13-1) as occurred.

The City of Atlanta Police Department's policy is wholly consistent with the probable cause standard for warrantless arrests in Georgia. Furthermore, Atlanta police officers also receive specific training in public interaction.[87] They are trained to be professional and courteous. Generally speaking, an arrest occurs only if an individual's behavior escalates to the level of disorderly or physically aggressive conduct, or if they have clearly violated the law in some other manner.[88]

Accordingly, there is no unconstitutional city custom or policy, and summary judgment should be granted to the City regarding Plaintiff's Fourth Amendment claims.

## III.   OFFICER BROWN IS ENTITLED TO QUALIFIED IMMUNITY.

The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.[89] The doctrine protects not only against liability, but the need for government officials to even defend against baseless lawsuits.[90] Qualified immunity is a question of law

---

[87] McGirt Decl. ¶ 8.
[88] *Id.*
[89] *Wilson v. Layne*, 526 U.S. 603, 609 (1999).
[90] *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982).

for the court.[91] A district court's denial of a summary judgment motion asserting

qualified immunity is immediately appealable.[92]

Public officials are shielded under qualified immunity so far as "their

conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."[93]  The qualified immunity analysis

consists of a preliminary inquiry plus two steps.  As a preliminary matter, the

defendant official must prove that he was acting within the scope of his

discretionary authority when the allegedly wrongful acts occurred.  Plaintiff

concedes that Officer Brown was acting in his discretionary capacity for purposes

of this lawsuit.[94]  The burden thus shifts to Plaintiff, whose allegations, if true,

must establish a constitutional violation.[95]  Plaintiff must do more than refer to

general rules and abstract rights to meet her burden.[96]  "Qualified immunity focuses

on the actual, specific details of concrete cases."[97]  Only if the plaintiff's

constitutional rights were violated does the court then proceed to the final step in

---

[91]  *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993).

[92]  *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1315 (11th Cir. 2005).

[93]  *Harlow*, 457 U.S. at 812.

[94]  Complaint, ¶¶ 6, 9, 48, 60.

[95]  *Wood v. Kesler*, 323 F.3d 872, 877-78 (11th Cir. 2003); *Harstfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995).

[96]  *Dorsey v. Wallace*, 134 F.Supp.2d 1364, 1371 (N.D.Ga. 2000) (citing *Jones v. Cannon*, 174 F.3d 1271, 1282-83 (11th Cir. 1999)).

[97]  *Jones*, 174 F.3d at 1283 (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

the qualified immunity determination—whether that constitutional right was clearly established.[98]

## A.    No Violation of Plaintiff's Constitutional Rights Occurred.

Plaintiff alleges that she was falsely arrested and maliciously prosecuted in violation of her Fourth Amendment Rights.  Plaintiff must prove a violation of her Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law torts alleged.[99]  But Plaintiff can not establish that she was unlawfully seized.  Nor can she establish that her "prosecution," assuming *arguendo* that there was one, was unlawful.  Plaintiff cannot meet her burden because the required elements of probable cause and malice are absent from both her claims.  An arrest does not violate the Fourth Amendment if there is probable cause for the arrest.[100]

The constituent elements of the common law tort of malicious prosecution in Georgia include: 1) a criminal prosecution instituted or continued by the present defendant; 2) with malice and without probable cause; 3) that terminated in the accused's favor; and 4) caused damage to the accused.[101]  Similarly, the elements of false arrest in Georgia are: 1) an arrest under the process of law; 2) without

---

[98]  *Wood*, 323 F.3d at 877-78; *Harstfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995).
[99]  *Wood,* 323 F.3d at 881.
[100]  *Lee v. Ferraro*, 284 F.3d 1188, 1194-95 (11th Cir. 2002).
[101]  *Wood*, 323 F.3d at 881-82; *Vojnovic v. Brants*, 612 S.E.2d 621, 624 (Ga. App. 2005).

probable cause; 3) made maliciously; and 4) with prosecution terminating in favor of complaining party.[102] Thus, probable cause (or the lack thereof) and the existence of malice are dispositive elements of each of Plaintiff's claims.[103]

Officer Brown's arrest was overwhelmingly supported by probable cause. Further, his actions were never motivated by malice. As detailed in City Defendants' Statement of Facts, Officer Brown was simply doing his job during a heavy thunderstorm, trying to keep Plaintiff from entering a hazardous area.

> 1. <u>Officer Brown had ample probable cause to arrest Plaintiff after her aggressive behavior</u>.

Probable cause has been defined in a variety of ways, but in essence it means nothing more than a reasonable basis for belief of guilt.[104] Enough evidence to support a conviction is not required.[105] Probable cause to arrest exists if, at the moment an arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient

---

[102] *See, e.g., Desmond v. Troncalli Mitsubishi*, 243 Ga.App. 71 (2000) (citing O.C.G.A. § 51-7-1).

[103] *See Daniel v. Village of Royal Palm Beach*, 889 So.2d 988 (Fla. Dist. Ct. App. 2004) (affirming lower court's grant of summary judgment entered against plaintiff on claims of false arrest and malicious prosecution because the evidence conclusively demonstrated that there was probable cause to arrest her for reckless driving despite the fact that she was later tried and acquitted).

[104] *U.S. v. Morris*, 477 U.S. 657, 663 (1973).

[105] *Id.*

to warrant a prudent man in believing that the suspect has committed or is committing an offense.[106]

The standard for probable cause requires that an arrest be objectively reasonable under the <u>totality</u> of the circumstances.[107]  If an officer had probable cause to believe that an individual has committed even a very <u>minor</u> criminal offense in his presence, the officer may arrest the offender without violating the Fourth Amendment.[108]

More important, the qualified immunity analysis does not consider whether the arrestee's conduct is truly a crime or ultimately results in conviction.[109]  In fact, to receive qualified immunity protection, an officer only needs <u>arguable</u> probable cause for the plaintiff's arrest.[110]  Arguable probable cause exists if an officer could have reasonably believed that probable cause existed <u>in light of the information the officer possessed</u>.[111]  The United States Supreme Court has stated clearly that

---

[106] *Id.*

[107] *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) (quoting *Ferraro*, 284 F.3d at 1195).

[108] *Ferraro*, 284 F.3d at 1194-95 (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001)).

[109]  *Scarborough v. Myles*, 245 F.3d 1299, 1303 n.8 (11th Cir. 2001).

[110] *Holmes v. Kucynca*, 321 F.3d 1069, 1079 (11th Cir. 2003) (citing *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997)); *Scarborough*, 245 F.3d at 1303 (finding that because officer had arguable probable cause to arrest plaintiff, he violated no clearly established law and was entitled to qualified immunity).

[111]  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.").

"[e]ven law enforcement officials who reasonably but <u>mistakenly</u> conclude that probable cause is present are entitled to immunity."[112]

Officer Brown's incident report, completed within hours of the arrest, states that:

> *"Ms. Skop then yelled 'you need to move your car so I can get in my driveway!' I advised Ms. Skop that there was a possibility that she could get hurt and that she could not get **<u>beyond</u>** my vehicle."*
> (emphasis added)

This is clear evidence that Officer Brown arrested Plaintiff for obstruction because he believed Plaintiff was insisting on being allowed to drive <u>further</u> down the street, when, we now know, Plaintiff's driveway was just a few feet away.[113]  What matters is that at the time of the incident, Officer Brown believed, based on the facts available to him, that Plaintiff broke the law.[114]  Although formal charges

---

[112]  *Id.*; *Butz v. Economou,* 438 U.S. 478, 507 (1978) (qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

[113]  Plaintiff alleges that she clearly informed Officer Brown that his patrol car was literally blocking her driveway.  Plaintiff will probably make much of this disputed fact, but it is not <u>material</u> to the probable cause analysis.

[114]  *See Devenpeck v. Alford*, 125 S.Ct. 588, 593, 543 U.S. 146 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known <u>to the arresting officer at the time of the arrest</u>."); *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (it is the function of the court to determine whether the facts <u>available to the officer at the moment of the arrest</u> would warrant his belief that an offense was committed).

were never filed against Plaintiff, that fact is irrelevant in the probable cause, and the qualified immunity, analysis.[115]

### 2. The absence of malice is also fatal to plaintiff's claim.

Plaintiff has adduced no evidence, other than her conclusory allegations, that Officer Brown's decision to arrest her involved deception, was discriminatory, spiteful, or motivated by any factor other than the lawful execution of his job duties in response to her aggressive behavior. "Malice consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured."[116]

Officer Brown never laid eyes on Plaintiff before July 10, 2003. But when confronted with an irate woman during a life-threatening thunderstorm, Officer Brown chose the course of action that he reasonably believed was best. Officer Brown believed Plaintiff's behavior truly merited her arrest.

In sum, while an arrest in fact occurred, Plaintiff has not shown that Officer Brown acted without probable cause, which is a mandatory element of her

---

[115] *See United States v. Seay*, 432 F.2d 395, 400 (5th Cir. 1970) (whether probable cause to arrest existed does not depend upon whether defendants were eventually convicted); *Colosimo v. City of Port Orange*, 2005 WL 1421294 at *5 (M.D. Fla. June 16, 2005) (that a defendant is subsequently acquitted or charges are dropped is of no consequence in determining the validity of an arrest) (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990)); *Shortz v. City of Montgomery*, 267 F.Supp.2d 1124, 1128-29 (M.D. Ala. 2003) (decision to dismiss charges did not mean that decision to detain plaintiff had no legal basis).
[116] *Vojnovic v. Brants*, 612 S.E.2d 621, 624-25 (Ga.App. 2005).

malicious prosecution and false arrest claims.[117]  Nor has she offered proof of

malice, another required element.  Accordingly, Plaintiff cannot establish that a

constitutional violation occurred and Officer Brown should be granted qualified

immunity.

**B.    The Constitutional Right At Issue Was Not Clearly Established.**

Because Officer Brown was acting in his discretionary capacity and because

Plaintiff can not overcome the arguable probable cause for her arrest, the court is

not required to consider whether the constitutional right at issue was clearly

established at the time of the arrest.  Nevertheless, assuming *arguendo* that the

court determines such a violation occurred, City Defendants argue that the right at

issue was <u>not</u> clearly established, and therefore Officer Brown is still entitled to

qualified immunity.

Plaintiff, who has the burden of proof at this stage, must now prove that

Officer Brown violated "clearly established statutory or constitutional rights of

which a reasonable person would have known."[118]  Plaintiff will likely argue that

the United States Supreme Court, in *Hope v. Pelzer*, did away with the factual

---

[117]  *Id*. at 882 (holding same regarding state trooper's arrest of motorist); *Wood*, 323 F.3d at 884
(the existence of probable cause and in particular the facts showing probable cause contradict
any suggestion of malicious intent or bad faith).
[118]  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818
(1982)).

specificity requirement long adhered to in this area of jurisprudence. But the Supreme Court revisited *Hope* in 2004 and reiterated that the law must be clearly established in a "particularized sense" for the plaintiff to meet her burden except in the "most obvious" of situations.[119] Indeed, just last year the Eleventh Circuit reversed a district court's decision denying qualified immunity and made clear that "factually novel" claims with no direct support for the plaintiff's theory of liability are insufficient to carry a plaintiff's burden of proof on the question of qualified immunity.[120]

In the instant case, Plaintiff will be hard pressed to cite a high court case[121] which, prior to Plaintiff's arrest, in a concrete and factually defined context, gave "fair warning" in a "particularized sense" to all police officers that conduct such as Officer Brown's violated the law. It would be an unreasonable interpretation of the law to support Plaintiff's allegation that in July 2003 Officer Brown was prohibited from "arresting, instituting and maintaining a criminal prosecution of the Plaintiff under the circumstances described herein."[122] City Defendants again remind this court of a critical fact: <u>Officer Brown did not know his car was</u>

---

[119] *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

[120] *See Hartley v. Butler*, 147 Fed.Appx. 61 (11th Cir. 2005).

[121] The Eleventh Circuit has explicitly stated that, with regard to the "clearly established law" analysis, it will only follow Supreme Court, Eleventh Circuit, and state supreme court law because "we do not expect public officials to sort out the law of every jurisdiction in the country." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc).

[122] Complaint ¶ 68.

blocking Plaintiff's driveway. He believed Plaintiff wanted him to move his

marked police car so that she could drive further down the street, closer to the

downed tree and power lines. Officer Brown believed his actions served to protect

Plaintiff, not harm her. This is simply not a case where Officer Brown should have

pondered whether, according to Plaintiff, he was possibly violating the

Constitution.

Plaintiff clearly challenged Officer Brown's authority and ignored his

requests for her to comply with his instructions. Plaintiff insisted that Officer

Brown respond to her demands when she could have simply parked her car

properly on the street and walked to her house. This court should not conclude that

only an incompetent officer or a knowing violator would have reacted as did

Officer Brown. Officer Brown is entitled to qualified immunity.

## IV. SERGEANT PADGETT IS ALSO ENTITLED TO QUALIFIED IMMUNITY.

The argument supporting the application of qualified immunity to Officer

Brown, thoroughly outlined above, carries even greater weight regarding Sergeant

Padgett.[123] It is undisputed that Sergeant Padgett was acting in his discretionary

---

[123] *See Hope*, 536 U.S. at 751 n.9 (J. Thomas, dissenting) (courts must consider whether each defendant's alleged conduct violated the plaintiff's clearly established rights; "an allegation that Defendant A violated. . . does nothing to overcome Defendant B's assertion of qualified immunity").

capacity. This court should conclude that Sergeant Padgett's mere authorization of Officer Brown's arrest of Plaintiff and impound of her vehicle—based on the few facts provided to him by Officer Brown over the phone during a very busy night—did not constitute a violation of Plaintiff's constitutional rights.

Pursuant to APD policy, after he placed Plaintiff under arrest, Officer Brown called and asked Sergeant Padgett for authorization to impound Plaintiff's vehicle.[124] Officer Brown informed Sergeant Padgett that Plaintiff's car was parked in the middle of the street with the doors open and the engine running. On that basis, Sergeant Padgett authorized the impound of Plaintiff's car. Sergeant Padgett also asked Officer Brown why Plaintiff was being arrested, and Officer Brown recounted Plaintiff's acts of obstruction. Based solely on the information Officer Brown provided him, Sergeant Padgett concluded that Plaintiff's arrest was lawful.

By no stretch of the imagination did Sergeant Padgett act maliciously or "conspire" with Officer Brown to harm Plaintiff. Sergeant Padgett performed a perfectly routine function as a police supervisor. It is telling that Sergeant Padgett was never charged with any work rule violations by the APD. Sergeant Padgett

---

[124] *See* APD Field Manual, Chapter 3 (outlining all instances when an officer <u>must</u> contact a supervisor).

did not violate Plaintiff's constitutional rights, and he is therefore entitled to

qualified immunity.

## V.  PLAINTIFF'S STATE LAW CLAIMS FAIL BECAUSE ALL CITY DEFENDANTS ARE ENTITLED TO IMMUNITY.[125]

Plaintiff's claims for false arrest and malicious prosecution are asserted

under state law as well.  City Defendants are entitled to summary judgment on the

state law claims because the City of Atlanta is entitled to governmental immunity.

Officer Brown and Sergeant Padgett are entitled to official immunity in their

individual capacities.

### A.  The City of Atlanta Is Entitled To Governmental Immunity From Plaintiff's State Law Claims.

Two Georgia statutes set forth clearly the governmental immunity

principles applicable to the City of Atlanta in this case.  O.C.G.A. § 36-33-1 states:

*(a) Pursuant to Article IX, Section II, Paragraph IX of the Constitution of the State of Georgia, the General Assembly, except as provided in this Code section and in Chapter 92 of this title, declares **it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages**. A municipal corporation shall not waive its immunity by the purchase of liability insurance, except as provided in Code Section 33-24-51 or 36-92-2, or unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy. This subsection shall not be*

---

[125]  If the Court grants summary judgment to the City Defendants in the federal arena, that should preclude any liability on Plaintiff's identical state claims.

> *construed to affect any litigation pending on July 1, 1986.*
> *(b) Municipal corporations shall not be liable for failure to perform or*
> *for errors in performing their legislative or judicial powers. For neglect*
> *to perform or improper or unskillful performance of their ministerial*
> *duties, they shall be liable.*

Additionally, O.C.G.A. § 36-33-3 states:

> *A municipal corporation shall not be liable for the torts of policemen or*
> *other officers engaged in the discharge of the duties imposed on them by*
> *law.*[126]

Thus, governmental immunity precludes this lawsuit against the City of

Atlanta unless the City waived its immunity by purchasing liability insurance,

which it did not.[127]  The doctrine of governmental immunity also protects the City

of Atlanta from liability for the actions of its employees.[128]

Plaintiff's complaint does not allege any express waiver of the sovereign

immunity statute that would apply to her claims.  Accordingly, the City of Atlanta

is immune from suit and entitled to summary judgment on the state law claims.

### B.      The Officers Are Entitled To Official Immunity From Plaintiff's State Law Claims.

Plaintiff's state law claims against the officers in their individual capacities

also fail as a matter of law.  Analogous to the federal doctrine of qualified

---

[126]  *See also City of Atlanta v. Heard*, 252 Ga.App. 179, 181, 555 S.E.2d 849, 852 (2001) (citing the same statutes and reversing the trial court's denial of summary judgment in favor of the city).
[127]  *See Reese v. City of Atlanta*, 261 Ga.App. 761, 762, 583 S.E.2d 584, 585 (2003) (stating same and affirming the trial court's grant of summary judgment in favor of the city).
[128]  *See id.* (holding same regarding the police officer in that case).

immunity, official immunity offers public officers and employees who are engaged in discretionary acts limited protection from suit in their personal capacity.[129]

Under Georgia law, an officer:

> *may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their* **official** *functions.*[130]

In other words, an officer may only be liable for the performance of a discretionary function if he acts with actual malice or intent to injure.[131]  Plaintiff concedes that Officer Brown and Sergeant Padgett were acting in their discretionary capacity. Thus, the court's only determination is, once again, as to malice.  As previously argued, the officers' actions against Plaintiff were lawful and not malicious. Accordingly, Officer Brown and Sergeant Padgett are entitled to official immunity regarding Plaintiff's state law claims.

## VI.    CONCLUSION

Plaintiff's federal claims against the City fail because she cannot show that any City policy or custom caused her injuries.  Plaintiff's state claims against the City fail because the City is entitled to governmental immunity under Georgia law.

---

[129] *Cameron v. Lang,* 274 Ga. 122, 123, 549 S.E.2d 341, 344 (2001).
[130] GA Const. Art. 1 § 2, ¶ IX(d)(emphasis added); *see also* O.C.G.A. § 36-33-4.
[131] *Cameron*, 274 Ga. at 125.

Plaintiff's federal claims against Officer Brown and Sergeant Padgett in their individual capacities fail because they are entitled to qualified immunity. Plaintiff's state claims also fail because Officer Brown and Sergeant Padgett are entitled to official immunity under Georgia law.

Accordingly, no genuine issue of material fact exists and City Defendants are entitled to summary judgment as a matter of law.

Respectfully submitted this 1st day of May, 2006.

<u>Attorneys for City Defendants</u>

LINDA K. DISANTIS                    DENNIS M. YOUNG
City Attorney                        Senior Assistant City Attorney
Ga. Bar No. 222666                   Ga. Bar No. 781744

<u>s/ Cleora S. Anderson</u>
CLEORA S. ANDERSON
Associate City Attorney
Ga. Bar No. 016576

CITY OF ATLANTA LAW DEPARTMENT
Suite 4100, 68 Mitchell Street, S.W.
Atlanta, Georgia  30303-3520
(404) 330-6400
(404) 658-6894 (facsimile)
Email:  csanderson@atlantaga.gov

Co-Counsel for Defendant Brown

Co-Counsel for Defendant Padgett

s/ Donald C. English (b.e.p.)
DONALD C. ENGLISH
General Counsel
Ga. Bar No. 248875

s/ Grady K. Dukes (b.e.p.)
GRADY K. DUKES
Staff Attorney
Ga. Bar No. 232465

SOUTHERN STATES POLICE BENEVOLENT ASSOCIATION
1900 Brannan Road
McDonough, Georgia  30253

## **CERTIFICATION**

Counsel for City Defendants certifies that this brief has been prepared with

Times New Roman font, 14 point, and therefore it complies with the requirements

of L.R. 5.1(C).