Westlaw.

161 Fed.Appx. 906                                                                                                Page 1

161 Fed.Appx. 906, 2006 WL 63959 (C.A.11 (Fla.))
**(Cite as: 161 Fed.Appx. 906)**

C
Briefs and Other Related Documents
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Eleventh Circuit Rule 36-2. (FIND CTA11 Rule 36-2.)
United States Court of Appeals,Eleventh Circuit.
Jeannie Nunez SULLIVAN, a.k.a. Jennie Sullivan, Plaintiff-Appellant,
v.
CITY OF PEMBROKE PINES, a Florida municipality, Michael Scopa, Officer, Defendants-Appellees.
No. 05-12754
Non-Argument Calendar.
D.C. Docket No. 04-60067-CV-UUB.

Jan. 12, 2006.

**Background:** Arrestee brought § 1983 and malicious prosecution claims against city police officer, and false arrest and battery claims against city, relating to unsuccessful prosecution of arrestee for battery upon law enforcement officer and resisting an officer without violence. The United States District Court for the Southern District of Florida granted summary judgment for defendants. Plaintiff appealed.

**Holdings:** The Court of Appeals held that:

1(1) officer had probable cause to arrest plaintiff for resisting an officer without violence, in violation of Florida law, and

2(2) officer did not use excessive force.

Affirmed.

West Headnotes

**[1] Arrest 35 ⟲63.4(15)**

35 Arrest
 35II On Criminal Charges
  35k63 Officers and Assistants, Arrest Without Warrant
   35k63.4 **Probable** or Reasonable **Cause**
    35k63.4(15) k. Appearance, Acts, and Statements of Persons Arrested. Most Cited Cases
City police officer had **probable cause** to arrest mother for resisting an officer without violence, in violation of Florida law, and thus, officer was not liable to mother, under § 1983 or Florida law, for false arrest; officer was responding to mother's report of domestic disturbance between her and her 16-year-old daughter, and mother obstructed officer's efforts to conduct his investigation of suspected domestic disturbance and a situation that might warrant involuntary commitment of daughter, by continuing to approach and interrupt him after she had been instructed to return to her vehicle. 42 U.S.C.A. § 1983; West's F.S.A. §§ 394.463(2)(a), 843.02.

**[2] Arrest 35 ⟲68(2)**

35 Arrest
 35II On Criminal Charges
  35k68 Mode of Making Arrest
   35k68(2) k. Use of Force. Most Cited Cases
City police officer's use of force against arrestee was de minimis, and thus, officer did not lose his qualified immunity from arrestee's § 1983 claim alleging excessive force; officer grabbed arrestee's arm, pulled her arms behind her back, forced her to the ground, placed his knee on her back, and handcuffed her. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[3] Arrest 35 ⟲68(2)**

35 Arrest
 35II On Criminal Charges

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

161 Fed.Appx. 906                                                                                         Page 2
161 Fed.Appx. 906, 2006 WL 63959 (C.A.11 (Fla.))
**(Cite as: 161 Fed.Appx. 906)**

35k68 Mode of Making Arrest
  35k68(2) k. Use of Force. Most Cited Cases
City police officer's use of force against arrestee was reasonable, and thus, city was not liable to arrestee under Florida law for battery based on excessive force; officer grabbed arrestee's arm, pulled her arms behind her back, forced her to the ground, placed his knee on her back, and handcuffed her.

*906 Mary Catherine Bonner, Ft. Lauderdale, FL, Plaintiff-Appellant.
E. Bruce Johnson, Scott D. Alexander, Johnson, Anselmo, Murdoch, Burke & George, Clark J. Cochran, Jr., Billing, Cochran & Heath, Fort Lauderdale, FL, for Defendants-Appellees.

Appeal from the United States District Court for the Southern District of Florida.

Before CARNES, MARCUS and WILSON, Circuit Judges.
PER CURIAM:
**1 Jeannie Nunez Sullivan appeals the district court's decision granting summary judgment in favor of Officer Michael Scopa on her 42 U.S.C. § 1983 and malicious prosecution claims and in favor of the City of Pembroke Pines on her false arrest and battery claims. We affirm.

I.

On January 13, 2002, Sullivan called 911 and requested help from the police during a fight with her sixteen-year-old daughter, Tiffany Gonzalez. Sullivan, Gonzalez, Sullivan's parents, and Sullivan's other two daughters were riding together in the family van when a domestic dispute occurred. While Sullivan was on her cell phone speaking to the 911 operator, Gonzalez opened the sliding van door and exited the slowly moving vehicle. Sullivan's distraught tone of voice is evident on the recording of this call.

Sullivan informed the 911 operator that Gonzalez was getting violent, that she had jumped from the moving vehicle, and that the police should be sent right away. On the recording, she can be heard telling Gonzalez that she is "Baker Acting [her] tonight," referring to Florida's involuntary commitment statute. *See* Fla. Stat. § 394.463. Gonzalez had been "Baker Acted" before on other occasions.

Officer Michael Scopa responded to this call. Sullivan located Gonzalez after Scopa had already arrived on the scene. Sullivan exited the van, and she and Scopa exchanged angry words. Sullivan told Scopa that Gonzalez needed to be "Baker Acted." Sullivan admitted that she "is usually loud and was loud then." Appellant's Br. at 15. Scopa told her that he was not ready to talk to her yet and told her twice to get back in the van.

Sullivan called 911 a second time, and once again her distraught tone of voice is evident on the tape of this call. During it, Sullivan told the operator that an officer was now on the scene but that he was making the situation worse and that she would not deal with him. She asked for another officer to be dispatched. The operator told her: "Ma'am stop yelling. I'm going to try to help you, but I can't hear you when you're screaming at me." Sullivan apologized and explained that she was upset. The operator asked her the name of the officer on the scene. Sullivan asked Scopa his name, but he told her he was busy. She approached him again, and he told her for a third time to get back to her vehicle. The parties dispute whether Sullivan touched Scopa at this point, but it is undisputed that she came close to him in an attempt to look at his name tag. Scopa told her one last time to get back to her car, and then he arrested her. He pushed her to the ground with her hands behind her back, placed his knee on her back, and handcuffed her.

Sullivan was charged with battery upon a law enforcement officer and resisting an officer without violence. She was acquitted following a jury trial. After her acquittal, Sullivan filed suit against Scopa and the City of Pembroke Pines alleging violations of 42 U.S.C. § 1983 and claiming false arrest, battery, and malicious prosecution.

**2 Sullivan claimed that Scopa violated § 1983

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

161 Fed.Appx. 906 Page 3
161 Fed.Appx. 906, 2006 WL 63959 (C.A.11 (Fla.))
**(Cite as: 161 Fed.Appx. 906)**

because his arrest of her was not supported by **probable cause** and because he had used excessive force. The district court found that Scopa had **probable cause** to believe that Sullivan was guilty of "resisting an officer without violence and/or disturbing the peace." The court also concluded that on Sullivan's excessive force *908 claim, Scopa was entitled to qualified immunity because at the time of the arrest, no law clearly established that Scopa violated Sullivan's constitutional rights. The court found that summary judgment was proper on Sullivan's malicious prosecution claim against Scopa because probable cause for the arrest existed.

Sullivan also claimed that the City of Pembroke Pines was liable for false arrest and battery based on Scopa's conduct in arresting her. The court found that because Sullivan could not establish that Scopa committed the underlying intentional torts of false arrest or battery, the city could not be held liable on these claims. The court concluded that Scopa had probable cause to arrest Sullivan; therefore, her false arrest claim was barred. It also found that the force Scopa used to arrest Sullivan did not constitute battery under Florida law because Scopa's actions were reasonably necessary and not clearly excessive under the circumstances. The court noted that it was undisputed that Sullivan ignored Scopa's instructions to return to her vehicle and continued to approach him, and it was also undisputed that she was yelling at him and at the 911 operator.

Therefore, the district court granted summary judgment in favor of both defendants.

## II.

We review a grant of summary judgment de novo, and we resolve any reasonable dispute of material fact in favor of the nonmoving party. *Zipperer v. City of Ft. Myers,* 41 F.3d 619, 622 (11th Cir.1995).

### A.

First, we must resolve whether there is a genuine issue of material fact concerning whether Scopa had **probable cause** to arrest Sullivan. "[P]robable cause constitutes an absolute bar to both state and § 1983 claims alleging false arrest...." *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir.1998). Moreover, Florida law and federal law apply the same standard to determine whether **probable cause** exists. *Id.* **Probable cause** exists when an arrest is objectively reasonable under the totality of the circumstances. *Id.* (citations and quotation marks omitted). There is **probable cause** "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (citations and quotation marks omitted).

To prove a § 1983 claim for false arrest, a plaintiff must demonstrate the absence of **probable cause**. *Id.* at 1436. The existence or absence of **probable cause** can be determined as a **matter of law** from the facts. *See id.*

[1] Sullivan contends that no **probable cause** existed for her arrest for any crime. She argues that in considering the defendants' motions for summary judgment, the district court failed to view the facts in the light most favorable to her as the nonmovant. Sullivan asserts that Scopa began his interaction with her by yelling at her, approaching very close to her, and acting aggressive as he ordered her to return to her vehicle. She argues that the district court failed to consider these facts when it reached its conclusions about the existence of probable cause and the absence of excessive force.

**\*3** Florida law makes it a crime to resist an officer without violence. Fla. Stat. § 843.02. The law provides:

Whoever shall resist, obstruct, or oppose any officer ... in the lawful execution of *909 any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree.

*Id.* In *Wilkerson v. State,* 556 So.2d 453, 455 (Fla.Dist.Ct.App.1990), the First Florida District

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

161 Fed.Appx. 906                                                                                                   Page 4

161 Fed.Appx. 906, 2006 WL 63959 (C.A.11 (Fla.))
**(Cite as: 161 Fed.Appx. 906)**

Court of Appeal held that Fla. Stat. § 843.02 was not unconstitutionally overbroad. Wilkerson, who was arrested for resisting an officer without violence, yelled and cursed at police officers. She contended that she was merely exercising her right to free speech and was not otherwise interfering with the officers' performance of their duties. *Id.* The court concluded that Wilkerson was engaged in conduct that went beyond the mere exercise her free speech rights. *Id.* at 456. The officers repeatedly told her to leave the area so that they could perform their duties, and she refused to do so. The court concluded that "[p]olice officers may lawfully demand that citizens move on and away from the area of a crime without impermissibly infringing upon the citizen's First Amendment rights." *Id.*

Sullivan contends that because she initiated the 911 call to request assistance from the police and simply tried to speak to Scopa to explain to him the mental health condition of her daughter, *Wilkerson* is distinguishable. These facts are insufficient to distinguish *Wilkerson.* In *Wilkerson* the court noted that the defendant was not arrested for merely yelling and cursing at the officers; she was arrested only after she refused to leave the area where the officers were attempting to perform their legal duties. *Id.* Similarly, Sullivan was arrested only after she repeatedly approached Scopa and interfered with his investigation.

Sullivan also cites a case from Vermont that distinguishes *Wilkerson* and holds that failure to obey an officer's command does not automatically make a person guilty of "hindering" the officer. *See State v. Stone,* 170 Vt. 496, 756 A.2d 785 (2000). Sullivan's reliance on *Stone* is misplaced. In addition to the fact that the language of the Vermont statute at issue in *Stone* differs from Fla. Stat. § 843.02, *Stone* is a criminal case in which the court ruled that it could not determine beyond a reasonable doubt that the defendant had violated Vermont law by "hindering" an officer in the performance of his duties. *Id.* at 791. In the present civil case, we must determine whether Sullivan failed to establish that probable cause justified her arrest for obstructing an officer in the performance of his legal duty. We conclude that Sullivan did fail to establish the absence of probable cause.

**\*\*4** Scopa had been dispatched to the scene of a domestic disturbance. Sullivan had told the 911 operator that her sixteen-year-old daughter was getting violent and had jumped from the family's moving vehicle. An involuntary commitment situation under Florida's Baker Act also potentially existed and required Scopa to investigate whether involuntary commitment was necessary. *See* Fla. Stat. § 394.463(2)(a) ("A law enforcement officer shall take a person who appears to meet the criteria for involuntary examination into custody.... The officer shall execute a written report detailing the circumstances under which the person was taken into custody....").

Scopa was investigating the situation-that is, he was performing his legal duty as a police officer-when Sullivan repeatedly interrupted him and interfered with his investigation. It is undisputed that he told her several times to return to her vehicle. He arrested her with probable cause to believe that she was violating Fla. Stat. § 843.02 because Sullivan obstructed his efforts to conduct his investigation of a suspected domestic disturbance and Baker Act situation by continuing to approach **\*910** and interrupt him after she had been instructed to return to her vehicle. *See Francis v. State,* 736 So.2d 97, 98-99 (Fla.Dist.Ct.App.1999) (affirming the resisting without violence conviction of a woman who blocked an officer's path and told him, "[I]t's okay; we don't need you," when the officer was investigating a 911 call).

In addition to evaluating **probable cause** in relation to Fla. Stat. § 843.02, the district court also considered whether **probable cause** existed to arrest Sullivan for disturbing the peace. This analysis was proper even though Sullivan was not charged with disorderly conduct because we have held that "the validity of the arrest does not turn on the offense announced by the officer at the time of the arrest." *Lee v. Ferraro,* 284 F.3d 1188, 1195-96 (11th Cir.2002); *see also State v. Cote,* 547 So.2d 993, 996 (Fla.Dist.Ct.App.1989) (same). However, because we conclude that Scopa had probable cause to arrest Sullivan for a violation of Fla. Stat. § 843.02, we need not address the issue of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

161 Fed.Appx. 906

Page 5

161 Fed.Appx. 906, 2006 WL 63959 (C.A.11 (Fla.))
**(Cite as: 161 Fed.Appx. 906)**

whether probable cause existed for disturbing the peace.

### B.

[2] Our next inquiry is whether Scopa used excessive force when he arrested Sullivan. It is undisputed that Scopa grabbed Sullivan's arm, pulled her arms behind her back, forced her to the ground, placed his knee on her back, and handcuffed her. There are no allegations that he hit, kicked, or used other force or that he kept her on the ground for any appreciable period of time.

"This Court has explained that when applied in excessive force cases, qualified immunity applies unless application of the standard would inevitably lead every reasonable officer [in the position of the defendant officer] to conclude the force was unlawful." *Nolin v. Isbell,* 207 F.3d 1253, 1255 (11th Cir.2000) (citation and quotation marks omitted). We have "established the principle that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Id.* at 1257 (11th Cir.2000). In *Nolin v. Isbell* a seventeen-year-old boy, Nathan Nolin, was wrestling and roughhousing with a friend, and police officers believed that the boys were fighting. *Id.* at 1254. As a result, Nolin was arrested. *Id.* Nolin brought a § 1983 excessive force claim against the officer who arrested him and alleged that the officer "grabbed him from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head against the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him." *Id.* at 1255. We held that "a minimal amount of force and injury, as present in the facts of this case, will not defeat an officer's qualified immunity in an excessive force case." *Id.* at 1258.

**\*\*5** Scopa did not use more force in arresting Sullivan than the officer used in *Nolin. See id.* Because we have held that this is a "de minimis" amount of force in effectuating a valid arrest, Sullivan has failed to establish an excessive force claim against Scopa. *See id.* at 1257.

### C.

Sullivan also brought false arrest and battery claims against the City of Pembroke Pines. As we have already noted, "probable cause constitutes an absolute bar to both state and § 1983 claims alleging false arrest." *Rankin,* 133 F.3d at 1435. We have concluded that probable cause existed for Scopa's arrest of Sullivan. Therefore, the false arrest claim against Pembroke Pines cannot stand.

**\*911** [3] Sullivan also alleges that the amount of force Scopa used in arresting her was unreasonable and unnecessary, and that it constituted a battery for which the city should be held liable. Florida law provides that "a presumption of good faith attaches to an officer's use of force in making a lawful arrest and an officer is liable for damages only where the force used is *clearly excessive* .... A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *City of Miami v. Sanders,* 672 So.2d 46, 47 (Fla.Dist.Ct.App.1996) (citations omitted) (emphasis added). For the same reasons we concluded that the force used by Scopa was not clearly excessive under the law of this Circuit, we also conclude that it was not clearly excessive according to the similar standard set forth under Florida law.

AFFIRMED.

C.A.11 (Fla.),2006.
Sullivan v. City of Pembroke Pines
161 Fed.Appx. 906, 2006 WL 63959 (C.A.11 (Fla.))

Briefs and Other Related Documents (Back to top)

• 05-12754 (Docket) (May. 16, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.