IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LAURA SKOP,<br><br>               Plaintiff,<br><br>     v.<br><br>CITY OF ATLANTA, GEORGIA,<br>OFFICER TIMOTHY BROWN in his<br>individual capacity, and SERGEANT<br>THOMAS L. PADGETT in his<br>individual capacity,<br><br>            Defendants. | CIVIL ACTION FILE<br><br>NO. 1:05-CV-1754-BBM |

## O R D E R

This matter is before the court on the Motion for Summary Judgment [Doc. No. 33] filed by defendants City of Atlanta, Georgia (the "City"), Officer Timothy Brown ("Officer Brown") and Sergeant Thomas L. Padgett ("Sergeant Padgett") (collectively, "defendants"). Also before the court is the Objection to the Declaration of Sergeant Jeffrey McGirt [Doc. No. 41] filed by plaintiff Laura Skop ("Skop").

## I.    Factual and Procedural Background

Due to the procedural posture of this case, the court is required to construe all facts in favor of Skop, and does so. For that reason, the following statement of facts does not constitute findings of fact by the court. On July 10, 2003, at approximately 5:30 p.m., Officer Brown was dispatched to Middlesex Avenue (located in the

Buckhead area of Atlanta) as a large tree had fallen and was lying perpendicularly across the road. Because he believed there were downed, and potentially live, power lines,[1] Officer Brown sought to close and prevent access to the road. The weather was admittedly severe and dangerous that day.

Upon arriving at the scene, Officer Brown positioned his patrol vehicle at an angle, at least fifty feet from the fallen tree. In so doing, it is undisputed Officer Brown partially blocked the driveway of plaintiff Skop, who resided at 1375 Middlesex Avenue. Relative to the fallen tree, Skop's home was located three houses down and on the opposite side of the street.[2] Additionally, the wooden utility poles located directly across the street and in Skop's yard, to which electric, cable, and telephone lines were attached, remained standing, with the lines hanging at their regular height.[3]

---

[1]Skop disputes this assertion as stated. Specifically, she claims "'by the time [Officer Brown] had arrived[,] tree cutters had already surveyed the area and it was clear which lines were electric and which were phone and cable. The electric lines were still above everyone's heads.'" (Pl.'s Statement of Material Facts ¶ 30 (quoting Ex. 16).) Additionally, claims Skop, although her neighbor Dr. John Lloyd ("Dr. Lloyd") attempted to communicate this information to Officer Brown, he refused to listen, instead ordering individuals to leave the vicinity of the fallen tree. (Id. ¶ 37.)

[2]The tree had fallen in front 1358 Middlesex Avenue, the home of Dr. Lloyd.

[3]According to Skop, "[t]he electric, cable and telephone lines in the neighborhood run along the opposite side of Skop's street on wooden poles. The electric, cable and telephone lines that connect to Skop's house hang over Middlesex Avenue and attach to a wooden pole that stands next to her mailbox." (Pl.'s Statement of Material Facts ¶ 26.)

Upon arriving home from work, Skop realized Officer Brown's patrol vehicle was partially blocking access to the south side of her driveway. According to Skop, she put her turn signal on to alert Officer Brown that she wished to enter the driveway his patrol vehicle was blocking. When Officer Brown did not respond,[4] Skop honked the horn of her car at least once. When Officer Brown still did not respond, Skop rolled down her passenger window. After Officer Brown rolled down his own window, Skop yelled something to the effect of "I just need to get into my driveway." (Pl.'s Statement of Material Facts ¶ 45 & Ex. 57, 33:12:25.) Although Officer Brown did not hear Skop's exact request, he responded that the area was hazardous and instructed Skop to "park her car next to the curb and walk to her house." (Defs.' Statement of Material Facts ¶ 13.) Skop, who was admittedly unable either to see Officer Brown or hear what he was saying, attempted to communicate her request several more times.[5] (Pl.'s Statement of Material Facts ¶ 45; Defs.'

It is undisputed, however, that the wooden pole in front of Dr. Lloyd's house had been damaged by the fallen tree. (Id. ¶ 28.) To this end, the lines attached both to the pole in front of Dr. Lloyd's house and the pole located directly across the street were hanging "close to the ground." (Defs.' Statement of Material Facts ¶ 8; see also Pl.'s Statement of Material Facts ¶ 28.)

[4]According to Skop, she was unsure at this point if anyone was in fact inside Officer Brown's patrol vehicle.

[5]Although unclear from either plaintiff's or defendants' Statement of Material Facts, it appears Officer Brown's response remained the same. (See Defs.' Statement of Material Facts ¶ 15 ("This verbal exchange occurred a third time.").)

Statement of Material Facts ¶¶ 14-15.)  When such attempts proved unsuccessful, Skop turned the engine off, exited her car, and proceeded to approach the driver's side window of Officer Brown's patrol vehicle.[6]

According to Skop, Officer Brown failed to acknowledge her as she stood outside his patrol vehicle, prompting Skop to knock on the driver's side window.  In response, claims Skop, Officer Brown, who had been doing paperwork, rolled down his window and yelled angrily, "[C]an't you see there is a tree down and this is a hazardous area?"  (Pl.'s Statement of Material Facts ¶ 48.)  Before Skop could reply, Officer Brown rolled up his window.  When Skop knocked on Officer Brown's window a second time, he again yelled there was a tree down.  Rather than knock on Officer Brown's window a third time, Skop asked for his name and badge number.  Officer Brown, claims Skop, proceeded to get out of his patrol vehicle and -- visibly angry -- yell, "Do you realize I can arrest you for obstruction?"  Skop  responded by pointing to her driveway and asking Officer Brown how he could arrest her as "[t]his is my driveway.  I just need you to pull up a foot."  (Id. ¶ 53.)  Skop then asked Officer Brown if she could get a neighbor to witness her arrest, taking several steps towards Doug Kollme's ("Kollme") residence, located directly left of her own. In response,

---

[6]Defendants dispute this assertion as stated.  Specifically, Officer Brown told Sergeant Padgett that Skop's car had been "parked in the middle of the street with the engine running and door open." (Defs.' Statement of Material Facts ¶ 22.)

Officer Brown "grabbed Skop's arm, twisted her around, handcuffed her, and pushed her into the back of his patrol vehicle."[7]   (Id. ¶ 56.)   It is undisputed that "[t]hroughout the incident," Officer Brown never asked Skop where she lived; however, "by the time he arrested her," Officer Brown "knew where she lived." (Id. ¶ 60; Defs.' Resp. to Pl.'s Statement of Material Facts ¶ 60.)   To this end, Skop maintains she "would have told Brown directly, if he had bothered to ask." (Pl.'s Statement of Material Facts ¶ 61.)

With Skop seated in his patrol vehicle, Officer Brown contacted Sergeant Padgett, his superior, to inform him of the arrest and seek permission to impound Skop's car.[8]   After Officer Brown explained why he had arrested Skop, Sergeant Padgett authorized the impound of Skop's vehicle.   Additionally, Sergeant Padgett asked Officer Brown whether he was going to charge Skop with failing to obey an officer directing traffic; Officer Brown said that he would.   (Padgett Dep. 71:14-20, Feb. 1, 2006.)   Thereafter, Officer Brown proceeded to complete two citation forms as

---

[7]Defendants dispute somewhat Skop's stated version of events.   Specifically, defendants claim Skop knocked on Officer Brown's door and told him that "he needed to move his car so she could enter her driveway." (Defs.' Statement of Material Facts ¶ 17.) Officer Brown responded by exiting his vehicle and telling Skop that if she did not vacate the area, she would be placed under arrest. (Id. ¶ 19.) When Skop failed to comply with Officer Brown's request, he placed her under arrest. (Id. ¶ 20.)

[8]According to Skop, Kollme asked Officer Brown "if he could get her car keys so that he could park her car and take care of her dog." (Pl.'s Statement of Material Facts ¶ 57.)   Officer Brown refused.

to Skop: one for obstruction and a second for failure to obey an officer directing traffic. (Pl.'s Statement of Material Facts Ex. 5.)

Although Officer Brown knew from Skop's license that she lived on Middlesex Avenue, he maintains "[i]t was not until the tow truck was en route to impound [Skop's] car" that he realized she "lived at the very house where he was standing." (Defs.' Statement of Material Facts ¶ 25.) Skop disputes this assertion, claiming both that her mailbox was located at the end of her driveway with the street number affixed in plain view and there was a street sign at the corner of Middlesex Avenue and Hillpine Drive. (Pl.'s Statement of Material Facts ¶¶ 21-22.) Additionally, claims Skop, upon arriving at the scene, Officer Brown had the following conversation with the police dispatcher:

| Officer Brown: | 3210[9] radio[.] |
| Dispatcher: | 3210 go ahead[.] |
| Officer Brown: | [Arrived at call] at 700 Hillpine, there is a tree down . . . show me out over here on Winslow with [Officer Fernandez]. |
| Dispatcher: | I copy, pull in code 12[10] on it? |

[9]Officer Brown's unit number was 3210.

[10]An officer is "pulled in" when he responds to a call. By contrast, he is "pulled out" when an investigation has taken place and no arrest or report has been made. (Pl.'s Statement of Material Facts ¶ 35 n.2.)

Officer Brown:      You can show that code 12 on that 31,[11] but hold me on the one with [Officer Fernandez].

(Pl.'s Statement of Material Facts ¶ 35; Defs.' Resp. to Pl.'s Statement of Material Facts ¶ 35.)

Skop filed her Complaint in this court on July 1, 2005. Therein, she asserts violations of her Fourth Amendment[12] rights under 42 U.S.C. § 1983[13] ("Section 1983") for false arrest and malicious prosecution, listing Officer Brown, Sergeant Padgett, and the City as defendants, respectively.[14] Defendants have since moved for

---

[11]A "Code 31" involves "utility wires that are down." When confronted with a Code 31, the officer "should not attempt to 'fix' the situation" but should instead "make the scene safe, attempt to determine the type of wire, and advise the . . . dispatcher to contact the appropriate utility." (Pl.'s Statement of Material Facts ¶ 35 n.3.)

[12]The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

[13]Section 1983 provides in relevant part that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[14]Skop also lists state law claims against Officer Brown and Sergeant Padgett for violations of O.C.G.A. § 51-7-1 (false arrest) and O.C.G.A. § 51-7-40 (malicious prosecution). As Skop has abandoned these claims in her Opposition to Defendants'

summary judgment, arguing that Officer Brown and Sergeant Padgett are entitled to qualified immunity for their acts. Defendants further argue that because Skop can point to no policy or custom that caused the alleged constitutional violations at issue, the City is similarly entitled to summary judgment.

## II.     Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Id. Although in considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," id. at 255, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Indeed, he must go beyond the pleadings and present affirmative evidence to show that a genuine issue

Motion for Summary Judgment, however, the court will not address them further. (See Pl.'s Opp'n to Defs.' Mot. for Summ. J. 2 n.2 ("Skop will not further pursue her State law claims in the interests of judicial economy . . . .").)

of material fact does exist.  <u>Anderson</u>, 477 U.S. at 257.  Finally, "'[i]f the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial.'"  <u>Club Car, Inc. v. Club Car (Quebec) Imp., Inc.</u>, 362 F.3d 775, 783 (11th Cir. 2004) (quoting <u>Clemons v. Dougherty County</u>, 684 F.2d 1365, 1369 (11th Cir. 1982)).

**III.  Analysis**

    A.  Officer Brown

Defendants argue first that Officer Brown is entitled to qualified immunity as to Skop's Section 1983 claims for false arrest and malicious prosecution.  Skop disagrees, arguing Officer Brown lacked probable cause in effecting her arrest for obstruction and failure to obey an officer directing traffic.  Skop further argues with respect to her malicious prosecution claim that "the evidence" establishes "a complete lack" of probable cause and malice.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 21.)

    1.  General Principles

As recognized  by the Eleventh Circuit, "[c]laims for money damages against government officials in their individual capacity involve substantial costs not only for the individual official--who incidentally may be innocent--but for society in general." <u>Foy v. Holston</u>, 94 F.3d 1528, 1532 (11th Cir. 1996).  Such costs include

the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials,] in the unflinching discharge of their duties.'

Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982)). Accordingly, "[t]he qualified immunity defense is the public servant's (and society's) strong shield against these dangerous costs." Id. Notably, "[t]hat qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir. 1998) (internal quotations and citation omitted).

To even be eligible for summary judgment under this theory, the official "must have been engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (quoting Harlow, 457 U.S. at 818). Although the parties do not dispute that Officer Brown was engaged in a "discretionary function" when arresting Skop, the panel in Holloman indicated that "binding Supreme Court and Eleventh Circuit precedents require us to consider expressly this critical threshold matter." Holloman, 370 F.3d at 1264. The inquiry is two-fold. Specifically, the court asks "whether the government employee was (a) performing a legitimate job-related

function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." <u>Id.</u> at 1265-66. Here, Officer Brown was "undoubtedly engaged in a discretionary function" when he decided to arrest Skop for obstruction and failure to obey an officer directing traffic. <u>See</u> <u>Holloman</u>, 370 F.3d at 1267. Indeed, it is undisputed that on July 10, 2003, "Officer Brown was engaged in the lawful discharge of his official duties by blocking traffic on Middlesex Avenue." (Compl. ¶ 48.) It is similarly undisputed that the authority to arrest any individual who impeded him from doing so was within his power to utilize. <u>See</u> O.C.G.A. §§ 16-10-24, 17-4-20(a), 40-6-2; <u>see also</u> <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 354 (2001) (holding "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender"). Accordingly, Officer Brown is eligible to offer qualified immunity as a defense to this action.

Given the court's conclusion, the burden shifts to Skop to show that Officer Brown is not entitled to qualified immunity. <u>See</u> <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1358 (11th Cir. 2003). "To overcome qualified immunity, the plaintiff must satisfy a two-prong test; [s]he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." <u>Holloman</u>, 370 F.3d at 1264; <u>see also</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

Notably, "[o]bjective legal reasonableness is the touchstone." <u>Foy</u>, 94 F.3d at 1532 (internal quotations and citation omitted); <u>see also</u> <u>Davis v. Scherer</u>, 468 U.S. 183, 191 (1984) (stating in <u>Harlow</u>, the Supreme Court rejected inquiry into an official's subjective state of mind in favor of a "wholly objective standard"). If Skop prevails as to both prongs of this test, Officer Brown is not entitled summary judgment on qualified immunity grounds. The court thus turns to the question of whether Officer Brown's conduct violated Skop's constitutional rights.

2. False Arrest

"An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest." <u>Wood v. Kesler</u>, 323 F.3d 872, 878 (11th Cir. 2003); <u>see also</u> <u>Sullivan v. City of Pembroke Pines</u>, 161 Fed. Appx. 906, 908 (11th Cir. 2006) ("[P]robable cause constitutes an absolute bar to both state and § 1983 claims alleging false arrest . . . .") (internal quotations and citation omitted). "'For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances.'" <u>Wood</u>, 323 F.3d at 878 (quoting <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195 (11th Cir. 2002)). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." <u>Rankin v.</u>

Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotations and citations omitted).

"When an officer asserts qualified immunity, the issue is not whether probable cause existed in fact, but whether the officer had 'arguable' probable cause to arrest." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1558 (11th Cir. 1993). "Because only arguable probable cause is needed, 'the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed in light of the information the officer possessed.'" Wood, 323 F.3d at 878 (quoting Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997)). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (internal quotations and citation omitted).

Whether there was arguable probable cause to arrest Skop depends upon what amounts to probable cause under Georgia law for obstruction and failure to obey an officer directing traffic.[15]    With respect to obstruction, Georgia law provides,

---

[15]The court necessarily begins its analysis with arguable probable cause because if "there is an insufficient showing of arguable probable cause, then there is clearly an insufficient showing of probable cause." Davis v. Williams, 451 F.3d 759, 764 n.7 (11th Cir. 2006). The court further notes that it need only focus on the first prong of the qualified immunity test (i.e., determining whether Skop's constitutional rights were violated) as it is clearly established that "an arrest made without probable cause violates the Fourth Amendment." Id. at 764 n.8.

"[e]xcept as otherwise provided in subsection (b) of this Code section, a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." O.C.G.A. § 16-10-24(a). "The essential elements of this misdemeanor offense are that the act constituting obstruction or hindering must be knowing and wilful, and that the officer must be lawfully discharging his official duties at the time of such act." Weidmann v. State, 222 Ga. App. 796, 797, 476 S.E.2d 18, 20 (1996). To this end, the Georgia Court of Appeals has observed that, "(T)he statute was made purposefully broad to cover actions which might not be otherwise unlawful, but which obstructed or hindered law enforcement officers in carrying out their duties." Id. (internal quotations and citations omitted). Further, to the extent any prior cases "stand for the proposition that a conviction for *misdemeanor* obstruction under *existing* OCGA § 16-10-24(a) requires evidence that *violence* was offered or done," they have been overruled. Duke v. State, 205 Ga. App. 689, 690, 423 S.E.2d 427, 428 (1992) (en banc); see also Weidmann, 222 Ga. App. at 797, 476 S.E.2d at 20 ("To consummate an offense of misdemeanor obstruction, some form of knowing and wilful opposition to the officer sufficient to constitute obstruction or hinderance [sic] is required, but actual violence or threat thereof is not.").

Here, although Skop now questions the actual danger presented, there is no

-14-

dispute that on July 10, 2003, Officer Brown believed there were downed, and

potentially live, power lines on Middlesex Avenue as a result of the fallen tree.[16]

There is similarly no dispute that Officer Brown was engaged in the lawful discharge

of his official duties by closing and preventing access to the road because of the

same.[17]  Although Skop spends much time emphasizing that "[s]he did nothing more

than try repeatedly to communicate to Brown that he needed to pull up a 'foot or so'

so that she could enter her driveway" (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 15-16),

by her own admission, she could not hear Officer Brown's initial response to her

request, repeated at least three times.  (Id. 6 ("Because of the weather, [Skop] could

---

[16]The court acknowledges Skop's point as to Dr. Lloyd's attempt to speak with
Officer Brown that "an officer may not choose to ignore information that has been offered
to him or her," Kingsland v. City of Miami, 382 F.3d 1220, 1229 (11th Cir. 2004).  It is
nonetheless undisputed that a large tree had fallen across Middlesex Avenue and other
utility lines were lying "close to the ground."  To this end, the court does not understand
Skop to be arguing that the area was not hazardous, but rather, the area was not so
hazardous that Officer Brown could not move his vehicle to let her pass.  (Pl.'s Statement
of Material Facts ¶ 39 (stating Skop "noticed . . . the fallen tree lying perpendicularly
across Middlesex Avenue by Dr. Lloyd's home and well beyond the patrol vehicle").)

[17]Skop emphasizes that throughout their exchange "Brown was not actively
directing traffic" but instead "sitting in his car doing paper work."  (Pl.'s Opp'n to Def.'s
Mot. for Summ. J. 16.)  Thus, she concludes, she "did not interfere with Brown's actual
duty to 'direct traffic,' she interrupted his paperwork."  (Id.)  It is the court's
understanding, however, that Officer Brown was dispatched to close and prevent access
to Middlesex Avenue due to the fallen tree and downed power and/or utility lines.  Thus,
the question at present does not depend on whether Officer Brown was "actively directing
traffic" during the parties' exchange, but rather, on whether Skop obstructed or hindered
Officer Brown's efforts to close and prevent access to Middlesex Avenue due to the above
conditions.

not hear well and was not sure whether Brown could hear either.").)  Officer Brown, however, claims he responded that because the area was hazardous, Skop should "park her car next to the curb and walk to her house."  Perhaps more important than the parties' miscommunication, however, is Skop's further -- albeit tacit -- admission that Officer Brown did not realize his car was blocking her driveway.[18]  Specifically, Skop plainly states that "[t]hroughout the incident, Brown never asked Skop where she lived," although "[s]he would have told Brown directly, if he had bothered to ask."  (Pl.'s Statement of Material Facts ¶¶ 60-61.)  Indeed, it was only "by the time he arrested her, [that] Brown knew where she lived."  (Id. ¶ 60.)  To this end, in an incident report filed the same day as Skop's arrest, Officer Brown stated his belief that Skop had been attempting to drive beyond his vehicle, rather than simply pull into her driveway.  (See Defs.' Mot. for Summ. J. 20 Ex. 5 (Atlanta Police Department Incident Report).)  Thus, taking Skop's facts as true (i.e., that her car was angled to enter her driveway, her turn signal was on, and she had repeatedly gestured toward her driveway), given Officer Brown's plain purpose in being dispatched to Middlesex Avenue (i.e., to ensure residents' safety by closing and preventing access to the road due to the fallen tree and fallen power and/or utility lines), the court cannot say he

---

[18]Indeed, Officer Brown's initial exchange with Dispatch would seem to indicate he did not even realize he was on Middlesex Avenue.  (See Section I, supra.)

was without arguable probable cause to arrest Skop for obstruction under O.C.G.A. § 16-10-24(a) when, notwithstanding his reasons for refusing to do so, she repeatedly requested that Officer Brown move his car and Officer Brown did not realize his vehicle was blocking her driveway. See generally Sullivan, 161 Fed. Appx. at 909-10 (finding defendant officer had probable cause to arrest plaintiff under Florida obstruction statute where plaintiff "continu[ed] to approach" defendant officer and "interrupt" defendant officer's investigation after she had been instructed several times to return to her vehicle).

Those cases Skop relies on in support of her argument do not demand a contrary result. Skop first cites Davis v. Williams, 451 F.3d 759, 767 (11th Cir. 2006) for the proposition that:

> Neither an owner's simple inquiry as to why officers are present on his property nor a person's attempt to bring a dangerous situation to the officer's attention can be construed as obstruction of justice or disorderly conduct. Nor can a citizen be precluded by the threat of arrest from asking to speak to an officer's superior or from asking for an officer's badge number. Those inquiries likewise do not constitute obstruction of justice or disorderly conduct.

(Pl.'s Opp'n to Defs.' Mot. for Summ. J. 17.) Simply put, the facts of this case do not equate with those in Davis. Specifically, unlike plaintiff in Davis, Skop neither asked Officer Brown why he was present on her property nor did she attempt to bring a dangerous situation to his attention. Although Skop was ultimately arrested after

asking Officer Brown for his name and badge number, she admittedly asked or attempted to ask no less than five previous times that Officer Brown move his vehicle, notwithstanding his repeated response that because the area was hazardous, she should simply park her car and walk to her house. Skop cites as well the Eleventh Circuit's holdings in Sheth v. Webster, 145 F.3d 1231 (11th Cir. 1998) and Thornton v. City of Macon, 132 F.3d 1395 (11th Cir. 1998) in support of the general proposition that because Officer Brown lacked probable cause for her arrest, he should be denied qualified immunity as to her Section 1983 false arrest claim. Having reviewed Sheth and Thornton, however, the court finds that both are factually inapposite to the instant matter. See Sheth, 145 F.3d at 1238 (finding no probable cause to arrest where defendant officer "became incensed and placed [plaintiff] under arrest" after plaintiff "objected to [defendant officer's] attempt to dictate [her] motel's refund policy and challenged his knowledge of the law"); Thornton, 132 F.3d at 1399 (finding no probable cause to arrest where defendant officers acted outside their authority by attempting "forcibly to resolve a civil dispute").

Accordingly, because Officer Brown had arguable probable cause to arrest Skop for obstruction,[19] he is entitled to qualified immunity as to Skop's Section 1983 false

---

[19]Officer Brown also issued Skop a citation under O.C.G.A. § 40-6-2 which provides, "No person shall fail or refuse to comply with any lawful order or direction of any police officer . . . with authority to direct, control, or regulate traffic." Because the court

arrest claim.

3. Malicious Prosecution

Skop also asserts a Section 1983 claim for malicious prosecution based on Officer Brown's issuing the citations for obstruction and failure to obey an officer directing traffic and arresting her. The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." Wood, 323 F.3d at 881; see also Uboh v. Reno, 141 F.3d 1000, 1002-03 (11th Cir. 1998). To establish a malicious prosecution claim under Section 1983, Skop "must prove a violation of h[er] Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution." Wood, 323 F.3d at 881; see also Whiting v. Traylor, 85 F.3d 581, 584-86 (11th Cir. 1996). "Because the species of Fourth Amendment violation alleged in this case arises by way of analogy to the common law tort of malicious prosecution, courts historically have looked to the common law for guidance as to the constituent elements of the claim." Uboh, 141 F.3d at 1004. To this end, the Eleventh Circuit has indicated that the constituent elements of the common law tort of

concludes Officer Brown had arguable probable cause to arrest Skop for obstruction under O.C.G.A. § 16-10-24(a), it need not address whether probable cause existed under O.C.G.A. § 40-6-2 as well. See Sullivan, 161 Fed. Appx. at 910. The court nonetheless observes that given the facts cited supra, its conclusion would likely be no different.

malicious prosecution in Georgia include: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Wood, 323 F.3d at 882 (citing Uboh, 141 F.3d at 1004); see also O.C.G.A. § 51-7-40. Finally, "although both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law." Wood, 323 F.3d at 882.

Here, Skop claims that Officer Brown maliciously issued her citations for obstruction and failure to obey an officer directing traffic without probable cause.[20] She further claims Officer Brown caused her to be unreasonably "seized" by making a custodial arrest on those charges (rather than simply ending her detention and issuing the citations). While it cannot be disputed that "a seizure (i.e., an arrest in fact) occurred in the course of the prosecution," as discussed supra, Skop has not shown that Officer Brown acted without probable cause, a necessary element of her Section 1983 malicious prosecution claim. See Wood, 323 F.3d at 882. Accordingly,

---

[20]Skop alleges as well Officer Brown's decision to impound her car when it had not been left in the middle of the road and Kollme offered to move it demonstrates malice.

because Officer Brown had arguable probable cause to issue the citations -- and, thus, to arrest Skop -- he is also entitled to qualified immunity as to Skop's Section 1983 malicious prosecution claim.  Id.; see also Paullin v. City of Loxley, 171 Fed. Appx. 773, 777-78 (11th Cir. 2006) (finding defendant entitled to qualified immunity on malicious prosecution claim where plaintiff failed to establish defendant was without arguable probable cause to arrest plaintiff in first instance).

B.    Sergeant Padgett

Defendants argue as to Sergeant Padgett that he is similarly entitled to qualified immunity as his "mere authorization of Officer Brown's arrest of Plaintiff and impound of her vehicle–based on the few facts provided to him by Officer Brown over the phone during a very busy night–did not constitute a violation of Plaintiff's constitutional rights."[21]    (Defs.' Mot. for Summ. J. 25.)  Skop disagrees, arguing in relevant part that although Sergeant Padgett "recognized . . . Brown's arrest of Skop made no sense under the circumstances" and "had the absolute authority to order

_____

[21]As with Officer Brown, neither party disputes that Sergeant Padgett was "engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." See Holloman, 370 F.3d at 1264.  To this end, Sergeant Padgett -- as Officer Brown's superior -- was undoubtedly performing a legitimate job-related function in determining whether Skop's arrest and the impoundment of her vehicle was appropriate under the circumstances.  Similarly, the authority to either allow or disallow both acts was undoubtedly within his power to utilize.  (See Pl.'s Statement of Material Facts ¶¶ 62, 70.) Accordingly, the court finds Sergeant Padgett is eligible to offer qualified immunity as a defense to this action.

Skop's release," he instead "'suggested' that Brown 'add on' a different charge" and "allowed Brown's punitive impound of Skop's car." (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 18.)

"Supervisors can be liable under section 1983 only if they actually participated in the allegedly wrongful act, or if a causal connection exists between their acts and the alleged violation." Post, 7 F.3d at 1560-61; see also Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985). Here, it is undisputed that Sergeant Padgett did not participate in the "allegedly wrongful act" (i.e., Skop's arrest). Additionally, and more importantly, Skop has also shown no causal connection between Sergeant Padgett's acts and the alleged violation. Although Skop argues Sergeant Padgett "recommended that [Officer Brown] also charge her with 'Failure to Obey' to shore up Brown's unlawful arrest" after "realizing that Brown had acted without probable cause in arresting Skop for obstruction" (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 9), she describes the conversation Officer Brown and Sergeant Padgett had in her Declaration as follows: "I heard [Officer Brown] speaking on his cell phone to someone. He was using numbers that did not mean anything to me, but I got the impression that he was talking to someone about how to charge me." (Skop Decl. ¶ 51.) In her Statement of Material Facts, Skop again describes the conversation Officer Brown and Sergeant Padgett had in vague terms: "[Officer Brown] told

Padgett about the situation and that he had arrested Skop for obstruction." (Pl.'s Statement of Material Facts ¶ 62.) Absent additional -- and more detailed -- information as to what Officer Brown actually told Sergeant Padgett with respect to Skop's arrest as well as Sergeant Padgett's response, the court finds there

is simply no basis for Skop's conclusion that Sergeant Padgett "realiz[ed] Officer Brown had acted without probable cause" and "recommended that [Officer Brown] also charge her with 'Failure to Obey' to shore up Brown's unlawful arrest." See Post, 7 F.3d at 1557 (noting "[c]onclusory allegations or evidence setting forth legal conclusions are insufficient to meet the plaintiff's burden" in opposing a motion for summary judgment).

Skop attempts to remedy the above problem by pointing to deposition testimony from Officer Brown and Sergeant Padgett respectively. (See Pl.'s Statement of Material Facts ¶¶ 62, 64, 68, 71-72.) The court finds Skop's efforts misplaced insofar as the passages she cites do little to help her meet her burden at the summary judgment stage. Specifically, in his deposition, Officer Brown plainly states that he "told [Sergeant Padgett] that [Skop] had abandoned her vehicle in the roadway" and he "didn't know" he had been blocking Skop's driveway "until [he] hung up the phone with Sergeant Padgett." (Brown Dep. 210:19-20, :24-25, Dec. 9, 2005.) While Officer Brown goes on to agree that he "didn't decide to charge [Skop] with [failure

to obey an officer directing traffic] until Sergeant Padgett suggested that to [him],"[22]

he flatly denies counsel's suggestion that Sergeant Padgett had "an objection to the

arrest that [he] had made." (Id. 211:13-16, 212:11-12.) Simply put, the court does not

read these statements to support Skop's assertion that Sergeant Padgett "realized that

Brown had acted without probable cause in arresting Skop" and "helped cover up

Brown's mistake." Rather, they more naturally seem to support defendants'

argument that "[b]ased solely on the information Officer Brown provided him,

Sergeant Padgett concluded that Plaintiff's arrest was lawful."[23] (Defs.' Mot. for

_____

[22]Sergeant Padgett's own deposition testimony bolsters that of Officer Brown on this point. Specifically, in response to counsel's questioning, Sergeant Padgett states:

> I remember asking him at the arrest if he charged her -- He said something about obstruction, and I asked what did she do that obstructed him; and he said she wouldn't comply with him when he was directing traffic. And I asked him if he was going to charge her with that, and he said he would.

(Padgett Dep. 71:14-20.)

[23]The court finds its conclusion bolstered by Sergeant Padgett's employee statement, made on August 5, 2005, in which he described his conversation with Officer Brown as follows:

> Officer Brown called me and advised me he had already made a physical arrest on Ms. Skop. I asked what the circumstances were, and he advised that she refused to comply with his orders to park her car down the street. He was dispatched to a location that had a down tree and live electrical wires in the street and he had positioned his car to block traffic from coming down the street and he indicated that Ms. Skop could have walked to her house and she insisted on driving down the street and parking in her driveway. Officer Brown stated that he had been turning away several cars and had asked several residences [sic] to step away from the live electrical

Summ. J. 25.)  Sergeant Padgett's statement to Officer Brown that the arrest "may have been lawful; but was it the right thing to do?" does not negate the court's conclusion.  (Padgett Dep. 176:6-7.)  Notwithstanding Skop's assertions to the contrary, by this statement, Sergeant Padgett in no way appears to concede the arrest was unlawful in the first instance.[24]  Additionally, in response to counsel's questions, Sergeant Padgett indicates Officer Brown's concern regarding the department's potential liability focused on Skop's welfare, rather than the unlawfulness of her arrest:  "[Officer Brown] said something like was I supposed to let her walk down and get electrocuted, or he said something to that effect.  I don't remember his exact words, but he was concerned about the ramifications if he would have let this lady injure herself."  (Id. 176:8-12.)

Because Skop has failed to establish that Sergeant Padgett participated in the allegedly wrongful act or that a causal connection exists between Sergeant Padgett's acts and the alleged violation, he too is entitled to qualified immunity as to Skop's

---

wires.  He stated that all the people were cooperative and complied with his instructions with the exception of Ms. Skop . . . .

(Pl.'s Statement of Material Facts Ex. 54.)

[24]The court wishes to emphasize that whether the arrest was advisable is an entirely separate question from whether it was lawful.  Only the answer to this second question matters for purposes of the court's analysis.

Section 1983 false arrest and malicious prosecution claims.[25]  See Post, 7 F.3d at 1561

(finding defendant supervisors entitled to qualified immunity where facts alleged did

not support inference that supervisors "directed the code team to act *unlawfully* or

that they knew the code team would act unlawfully and failed to stop it").

    C.    The City

    Defendants argue finally that because Skop can point to no policy or custom

that caused the alleged constitutional violations at issue, the City is also entitled to

summary judgment.  Skop grounds her Section 1983 claims against the City on the

theory that  its "utter failure to train Brown, or his fellow officers, led directly to the

Fourth Amendment violations at issue."[26]  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 25.)

_____

[25]Insofar as the court has concluded no constitutional violation occurred in the first instance, it notes Skop's Section 1983 claims against Sergeant Padgett fail on this basis as well.  See Hicks v. Moore, 422 F.3d 1246, 1253 (11th Cir. 2005).

[26]Skop has filed an Objection to the Declaration of Sergeant Jeffrey McGirt, which defendants rely on primarily to support the proposition that "Atlanta police officers are specifically instructed concerning the legal circumstances under which they can make an arrest without a warrant" in their Motion for Summary Judgment.  (Defs.' Mot. for Summ. J. 13; see also McGirt Decl. ¶¶ 5-8.)  According to Skop, in contravention of Federal Rule of Civil Procedure 26(a)(1)(A), defendants wholly failed to provide McGirt's name as an "individual likely to have discoverable information that the disclosing party may use to support its claims or defenses" and "identify[] the subjects of the information" prior to filing their Motion for Summary Judgment. Fed. R. Civ. P. 26(a)(1)(A); see also Local Rule 26.2C. (N.D. Ga.) (requiring designation of expert witnesses "sufficiently early in the discovery period to permit the opposing party the opportunity to depose the witness").  Insofar as Skop was effectively "denied any meaningful opportunity to depose Sergeant McGirt or engage in additional discovery relevant to the factual allegations in his Declaration," Skop requests that McGirt's Declaration be stricken from the record.  (Pl.'s Objection to the Decl. of Sergeant Jeffrey McGirt 3); see also Hancock v. Hobbs, 967 F.2d

Because, however, the court has concluded that arguable probable cause existed for Skop's arrest, Skop's Section 1983 claims against the City for false arrest and malicious prosecution cannot be sustained.  See <u>Sullivan</u>, 161 Fed. Appx. at 910-11; <u>see also</u> <u>Rooney v. Watson</u>, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.").

## IV.    Summary

For the foregoing reasons, defendants' Motion for Summary Judgment [Doc. No. 33] is GRANTED.  Plaintiff's Objection to the Declaration of Sergeant Jeffrey McGirt [Doc. No. 41] is GRANTED.

IT IS SO ORDERED, this 4th day of August, 2006.


s/Beverly B. Martin
BEVERLY B. MARTIN
UNITED STATES DISTRICT JUDGE

---

462, 467-68 (11th Cir. 1992) (affirming district court decision to exclude expert witness affidavit where plaintiff failed to disclose witness' identity and substance of his testimony until five months after retaining him and over three months after discovery had ended). In this case, fact discovery closed on December 22, 2005, expert discovery closed on February 20, 2006, and Sergeant McGirt's testimony was not made known to Skop until defendants filed summary judgment motions on May 1, 2006.  The court agrees with Skop and her Objection to the Declaration of Sergeant Jeffrey McGirt is GRANTED.